KINION v. THE KANSAS CITY, FT. SCOTT & MEMPHIS RAILROAD COMPANY, *Appellant*.

### Division One, December 11, 1893.

1. **Public Land**: RAILROAD RIGHT OF WAY: HOMESTEAD ENTRY. The act of congress of March 3, 1875, section 4, granting a right of way over the public lands to railroads, declares that a profile of the projected railroad shall be filed with the register of the local land office and upon approval thereof by the secretary of the interior, the same shall be noted on the official plats and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way. *Held*, that the approval of the profile related back to the definite location of the road and gave the company a title paramount to that of the homestead claimant who, with knowledge of the company's prior entry and location of its road, subsequently made a homestead entry of land embracing the right of way, even though the company did not file its profile with the register of the local land office.

2. ———:———: ———. Such homestead occupant acquired no right to the land as against the government or any person claiming under it, until the making of his formal homestead entry.

3. ———: ———: ———. Revised Statutes, United States, section 2288, giving the homestead occupant the right to convey a railroad right of way across the homestead before his title thereto is perfected has no application to the case of one who was not an occupant at the time of the location of the road but who became such before the approval by the secretary of the interior of the company's profile of the location of its line.

*Appeal from Howell Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

REVERSED.

*Wallace Pratt, I. P. Dana* and *Olden & Orr* for appellant.

(1) Defendant made the first lawful entry on the land in question, under a general grant from the United

VOL. 118—37

States, took possession of it and has ever since used it for the purposes of the grant, having perfected its original entry in conformity with the terms of such grant. Act of Congress, March 3, 1875. (Supplement to U. S. Revised Statutes, 1874–1881, p. 187. (2) It is not subject to ejectment from its right of way, so taken at the suit of a homesteader whose entry was made after defendant's and whose patent was issued several years after it perfected its title to the right of way by complying with the original grant to it, even though such patent contains no reference to, nor exception of, such right of way. *Wright v. Gish,* 94 Mo. 110; *Lessieur v. Price,* 12 How. (U. S.) 59; *Simonson v. Thompson,* 25 Minn. 450; *Railroad v. Gordon,* 41 Mich. 420; *Railroad v. Baldwin,* 103 U. S. 426. (3) A railroad cannot be ejected from its right of way when the proof shows that it went on the land and located and constructed its railroad with the knowledge, consent or acquiescence, either expressed or implied, of the land owner. *Dodd v. Railroad,* 108 Mo. 581; *Kanaga v. Railroad,* 76 Mo. 207; *Walker v. Railroad,* 57 Mo. 275; *Baker v. Railroad,* 57 Mo. 267; *Railroad v. Allen,* 15 N. E. Rep. 446; *Railroad v. Smith,* 15 N. E. Rep. 256; 2 Wood on Railway Law, 792. (4) Declaration number 1, given at the instance of plaintiff, was improper because it deprived defendant of the benefit of any and all steps taken by its predecessor to obtain the right of way over this land. *Kanaga v. Railroad,* 76 Mo. 207. (5) Declaration number 2 is subject to the same criticism, and the further objection that it declares that anything short of a conveyance from the government or the plaintiff will not defeat the plaintiff's right to eject. *Dodd v. Railroad,* 108 Mo. 581, and cases cited. (6) Declarations number 3 and 4 assume the existence of certain facts, and the truthfulness of others; and declare that notice to its attorney is notice to a corpora-

tion without proof of the scope of such attorney's authority. *Stoher v. Railroad*, 91 Mo. 509. (7) As applied to the undisputed facts in this case, declaration number 5 asked by defendant properly announced the law and should have been given. *Dodd v. Railroad*, 108 Mo. 581; *Kanaga v. Railroad*, 76 Mo. 207; *Walker v. Railroad*, 57 Mo. 275; *Baker v. Railroad*, 57 Mo. 267; *Reichert v. Railroad*, 5 Law. Rep. Amer. 183; *Railroad v. Smith*, 113 Ind. 233; *Goodin v. Railroad*, 18 Ohio St. 169; *McAulay v. Railroad*, 33 Vt. 321; 2 Wood on Railway Law, 792: *Lawrence v. Railroad*, 39 La. Ann. 427. (8) Declarations numbered 6, 7, 8, 9 were based on the undisputed facts and properly declared the law arising thereon and should have been given. *Railroad v. Allen*, 15 N. E. Rep. 446, and cases cited; *Railroad v. Smith*, 15 N. E. Rep. 256. (9) Declaration number 10 asked by defendant was the proper legal construction of the effect of plaintiff's demand for compensation. *Baker v. Railroad*, 57 Mo. 267, and cases cited; *Provolt v. Railroad*, 57 Mo. 256; *Smart v. Railroad*, 20 N. H. 233; *Railroad v. Johnson*, 59 Pa. St. 290.

*James Orchard* for respondent.

(1) A homestead made before line of definite location, holds the land (and it does this although the homestead might have been canceled). *Railroad v. Dunmyer*, 113 U. S. 1122, Book 28 Lawyers Co-operative Publishing Company; Act of Congress, March 3, 1875, Revised Statutes of United States (Sup.), p. 92, section 4; Revised Statutes of United States, 1878, section 2288. (2) In this case the plaintiff went to the attorney of the railroad, who had charge of the right of way proceedings, in February, 1882, after he had homesteaded and before the defendent had filed its maps of definite location and demanded pay and defendant's attorney rep-

resented that he had already secured the right of way from the government, when in fact there had been no effort in that direction, but it misled the plaintiff and caused him to drop the case, and he did so until he read his patent, so we take it that there was no acquiescence on the part of the plaintiff, and if not, then ejectment is his proper remedy. *Walker v. Railroad*, 57 Mo. 275; *Evans v. Railroad*, 64 Mo. 453; *Armstrong v. St. Louis*, 69 Mo. 309; *Bradley v. Railroad*, 91 Mo. 493. (3) There is no evidence that this road was ever completed, and if it was not, then defendant would forfeit their right of way, if any had ever been acquired. See U. S. Statutes, 1874–1881, p. 92, sec. 4, March 3, 1875.

BLACK, P. J.—Plaintiff commenced this action of ejectment in the Howell county circuit court in 1891 to recover eighty acres of land, alleging an ouster in March, 1882. The defendant admitted possession of a strip one hundred feet in width across one corner of the land, the strip containing three and one-half acres; but denied possession and disclaimed as to all the balance of the land described in the petition.

On the trial the parties made the following admissions:

The land described in the petition was government land in 1881. The Kansas City, Springfield and Memphis Railroad Company, a corporation organized under the laws of this state, made its preliminary survey over the land in April, 1881, and in August, 1881, made a definite location of its line and then cleared out the right of way and commenced the construction of the road. The articles of incorporation of the company were approved by the secretary of the interior on the fifteenth of February, 1882, who also approved the map of definite location crossing the land in question

on the seventeenth of June, 1882. The above named company completed its road in 1882, and continued to own the same until the year 1888, when the road was transferred to the defendant railroad company.

Kinion, the plaintiff, settled on the eighty acres in February, 1881, made a homestead entry on the thirteenth of January, 1882, and made final proof on the twenty-fifth of October, 1888. The patent to him, as we understand the record, makes no mention of an exception of this right of way. The proof in the case is clear that the plaintiff knew the railroad company had located its line of road over the land when he made his homestead entry.

The defendant claims the right of way under the act of congress of March 3, 1875 (18 U. S. Stats. at Large, p. 482). The first section of that act provides: "That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state,  *  *  * which shall have filed with the secretary of the interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road."

And the fourth section is in these words: "That any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the secretary of the interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject

to such right of way. *Provided*, That, if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section, of said road.''

Although the plaintiff settled upon the land in February, 1881, still he acquired no right thereto as against the United States or anyone claiming under the United States, until he made his homestead entry on the thirteenth of January, 1882. All this he concedes. But his claim is this: That the railroad company acquired no rights and was a trespasser, until the seventeenth of June, 1882, when the profile plat was approved by the secretary of the interior. To this contention of the plaintiff we do not agree.

The act of congress operated as a grant of the right of way to the company, and the grant took effect from the date of the acceptance of the provisions thereof in the manner pointed out by the act. According to the fourth section a company desiring to secure the benefits thereof must take the following steps: *First*, it must locate the road; and it necessarily follows that the company has the right to go upon the public lands for the purpose of making the location, and in doing so it is not a trespasser. *Second*, the company is required to file a profile plat, within twelve months thereafter, with the register of the local land office. It is then provided that upon the approval of the profile by the secretary of the interior, the same shall be noted upon the plats in the land office; and thereafter the land over which the right of way is located shall be disposed of, subject to the right of way.

Now it is conceded that the company took the first step to accept the provisions of this act, and this, too, long prior to the time the plaintiff made his homestead entry. While it does not appear that the company

ever filed a profile plat with the register of the local
land office, still it does appear and is a conceded fact
that the company made a profile plat, and this plat was
duly approved by the secretary of the interior, and this
was done within the twelve months within which the
profile should have been filed with the register of the
local land office. The approval of the profile plat seems
to be made the final act perfecting the company's claim
to the right of way. As this act was performed, and
that, too, within the time allowed by the law for filing
the plat with the register of the local land office, we
cannot see that the company lost any of its rights by
a failure to file the plat with the register of the local
land office. The plat having been presented to and
approved by the secretary of the interior it became the
duty of the land office officials to make the proper nota-
tions on the plat books in the land office. The approval
of the profile plat by the secretary of the interior per-
fected the grant of right of way to the company, and
that grant took effect by relation as of the date of the
location of the road over the land, that is to say, August,
1881; while the plaintiff's homestead title took effect as
of the date of the homestead entry, namely, the thir-
teenth of January, 1882. The company was, therefore,
prior in time, and in our opinion also prior in right.
It has a perfect title to the right of way as against the
plaintiff.

We do not stop to consider what effect a failure to
file the profile with the register of the local land office
within twelve months after the location of the road
would have as to a homestead claimant who had no
notice of the location of the railroad when he made his
homestead entry; for it is an undisputed fact that
plaintiff knew the road had been located across this
land, the right of way cleared, and the work of con-
struction of the road commenced when he made his

homestead entry. He therefore made his entry subject to all the rights of the company.

But it is said the act of the third of March, 1875, was not intended to apply to cases where the company can get the right of way from the occupying claimant, and we are cited to section 2288, Revised Statutes, United States, 1878, to show that the company could have acquired the right of way from the plaintiff. That section gives the homestead occupant the right to convey a railroad right of way across the homestead before his homestead title thereto is perfected; but it can have no application to the case in hand, because the plaintiff was not a homestead occupant when the company entered and located its road. According to the plaintiff's claim, the company would be bound to procure the right of way from persons who settle upon the lands under the pre-emption and homestead laws after the location of the railroad and before the approval of the profile plat by the secretary of the interior. Such a construction defeats the leading object of the act; for it was manifestly designed to encourage the construction of railroads over public lands by granting a right of way without compensation.

On the admitted facts in this case, the judgment should have been for the defendant. The judgment is, therefore, simply reversed. All concur, except BARCLAY, J., who dissents.

### SEPARATE OPINION.

BARCLAY, J.—The plaintiff settled on the land in question in February, 1881, before the railway company took any steps whatever toward placing its road thereon. The preliminary survey by the company was in April, 1881, and in August of that year its line

was definitely located upon the land.  Plaintiff made the formal entry of his homestead, January 13, 1882, and his final proof in 1888.

The defendant's map of definite location was approved by the secretary of the interior, June 17, 1882.

The act of congress "granting to railroads the right of way through the public lands of the United States" (18 Stat. 482) prescribes the steps to be taken by companies desiring to secure its advantages.  The statute is very clear on the point now in view.  It undertakes to offer a grant of certain portions of the public lands of the United States upon terms and limitations plainly stated.  By the fourth section of the act it is provided that upon the filing of a profile of the road with the register of the local land office, and its approval by the secretary of the interior, "the same shall be noted on the plats in said office; and thereafter all such lands, over which such right of way shall pass, shall be disposed of, subject to such right of way," etc.

At the time when the profile was approved in this case, the plaintiff had already made his formal entry of homestead, which he ultimately perfected.  Yet it is now held that the approval of the profile of the defendant's railroad in some way related back to the time of the location of the road upon the land, and thus destroyed the right of plaintiff to his homestead.

The doctrine of relation is a fiction of jurisprudence, sometimes invoked to attain the ends of justice.  But it certainly cannot be applied when it interferes with the express terms of positive law.  The word *"thereafter,"* in the statute before us, shows so manifestly the legislative purpose not to transfer to the railway company the public title until the date of approval by the secretary, that no room is left for an

application of the theory of "relation."

If congress had intended that the location of the road, as defined on the profile, approved by the secretary of the interior, should relate back and take effect as of a prior date, it would undoubtedly have so declared. Just as it did declare, for example, in another law, of May 14, 1880, "that any settler who has settled, or who shall hereafter settle, on any of the public lands of the United States, whether surveyed or unsurveyed, with the intention of claiming the same under the homestead laws, shall be allowed the same time to file his homestead application and perfect his original entry in the United States land office, as is now allowed to settlers under the pre-emption laws to put their claims on record, and his right shall relate back to the date of settlement, the same as if he settled under the pre-emption laws." 21 Stat. 140; 1 Supp. Revised Statutes, United States [2 Ed.], 1874–1891, ch. 89, sec. 3, p. 282.

It is obvious that the word "thereafter," in the railroad right-of-way act, was used accurately, and with a clear purpose. The same language is found in the act granting rights of way through public lands for irrigating canals. 1 Supp. Revised Statutes, United States [2 Ed.], 1874–1891, sec. 19, p. 946.

And the third section of the railway act in question provides how a right of way may be obtained by a railroad by process of condemnation of "private lands and possessory claims on the public lands."

This indicates that the act was not designed to sanction any such application of the doctrine of "relation" as would entirely cut out such "possessory claims on the public lands," vested prior to the approval of the profile of the road.

The view entertained by congress on the point of present consideration is further shown in the second

proviso of the act of June 22, 1874, "for the relief of settlers on the public lands" (1 Supp. R. S., U. S. [2 Ed.], 1874–1891, ch. 400 p. 38), thus: "That this act shall not be construed so as in any manner to confirm or legalize any decision or ruling of the interior department under which lands have been certified to any railroad company when such lands have been entered by a pre-emption or homestead settler after the location of the line of the road and prior to the notice to the local land office of the withdrawal of such lands from market."

An intimation has been thrown out in this case to the effect that unless the act of congress is so construed as to unroot, by a vigorous application of the doctrine of "relation", all homestead entries made between the location of the line and the approval of the profile, the leading object of the act, namely, the encouragement of railroad building, may be defeated. But to this it may be answered: *first*, that the government has the undoubted right to name the conditions on which its gift of the public lands shall take effect; and, *secondly*, that by permitting the permanent location of the right of way in sections of twenty miles each (see section 4), the possibility of homestead entries being made with a view to intercept the line of the road is not so great as seriously to impair the value of the rights conferred by the act, or discourage the construction of railways.

If there is anything in the maxim that he who is prior in time is stronger in right, as applied to the facts of this case, it certainly should bear in favor of plaintiff, rather than of defendant.

Plaintiff had settled on the land before any move was made by the railway company towards acquiring any interest in it. In my opinion his rights under his homestead entry are superior to those of the defendant, in view of the statutes referred to. .

It has been held in some other states that the title of the federal government does not pass to the railroad company, under the fourth section of the first act above mentioned, until the approval of the profile of the road. *Railroad v. Sture* (1884), 32 Minn. 95; *Larsen v. Oregon Co.* (1890), 19 Ore. 240; *Enoch v. Railroad* (1893, Wash.), 33 Pac. Rep. 966; *Railroad v. Van Cleave* (1893, Kan.), 33 Pac. Rep. 472.

Those cases appear to me correct interpretations of the law on this point, and in none of them is it suggested that the railroad title can, "by relation" or otherwise, be promoted in point of time so as to cut out a homestead entry made prior to the approval of the profile by the secretary of the interior.

As the opinion rendered by the learned chief justice denies absolutely the paramount effect of the plaintiff's homestead entry and title, as claimed by him by virtue of the laws of the United States, and thus determines an important federal question under the judiciary act (R. S., U. S. [2 Ed.], 1878, sec. 709), it has seemed proper to give expression to some of the reasons which lead me to respectfully dissent from the judgment pronounced in this court.