[Civil No. 910.   Filed March 30, 1906.]

[84 Pac. 1097.]

PHŒNIX AND EASTERN RAILROAD COMPANY, a Corporation, Plaintiff and Appellant, v. ARIZONA EASTERN RAILROAD COMPANY, a Corporation, Defendant and Appellee.

1. RAILROADS—PUBLIC LANDS—GRANT OF RIGHT OF WAY.—Legal title to a right of way sought by a railroad company under the grant of the act of Congress of March 3, 1875, (chap. 152, 18 Stats. 482; U. S. Comp. Stats. 1901, p. 1568,) vests upon the approval by the secretary of the interior of the profile of its road, and not prior thereto.

2. SAME—RIVAL CLAIMANTS—APPROVAL OF PROFILE.—When rival aspirants for the same right of way under the act of Congress of March 3, 1875, (chap. 152, 18 Stats. 482; U. S. Comp. Stats. 1901, p. 1568,) file profiles covering it, a duty devolves upon the secretary of the interior to determine from the facts which company has superior claim to the approval of its profile and to give his approval acordingly.

3. SAME—CONTEST IN INTERIOR DEPARTMENT.—While a contest is pending before the secretary of the interior between rival railroad companies seeking approval of conflicting profiles of their roads

under the act of Congress of March 3, 1875, (chap. 152, sec. 4,· 18 Stats. 483; U. S. Comp. Stats. 1901, p. 1569,) courts should not assume jurisdiction to determine the ultimate right of possession of the right of way in controversy.

**4.** SAME—INJUNCTION.—Pending determination of such a contest, a court ought, in the interest of the public as well as in the interest of the company showing the greater immediate equity, upon application of the company interested, by appropriate temporary orders, to protect it in the construction of its road.

**5.** SAME—CHANGE OF LOCATION.—A railroad company which has obtained approval, under the ·act of Congress of March 3, 1875, (chap. 152, sec. 4, 18 Stats. 483; U. S. Comp. Stats. 1901, p. 1569,) of a profile of its road, may change a portion of its location, provided such change does not interfere with intervening rights.

**6.** SAME.—A rival company which is not misled by the acts of a company so changing or seeking to change its location, and which has not acquired intervening rights, may not be heard to complain of such change.

(Syllabus by the Court.)

APPEAL from a judgment of the District Court of the Second Judicial District in and for the County of Pinal. Fletcher M. Doan, Judge. Reversed.

On appeal to the United States Supreme Court.

Statement of facts:—

Action on complaint and cross-complaint to obtain, and enjoin interference with, possession of a railroad right of way. From a judgment against plaintiff, granting affirmative relief to defendant, plaintiff has appealed. Reversed.

T. J. Norton, U. T. Clotfelter, L. H. Chalmers, and E. W. Camp, for Appellant.

Eugene S. Ives, for Appellee.

The Arizona Company became a specific grantee under the act of Congress on February 19th, the date upon which it filed its articles of incorporation and proofs of organization in the office of the register of the land-office at Tucson, and from and after that date was qualified to select and locate a railroad right of way on the public domain. *Van Wyck v. Knevals,* 106 U. S. 360, 1 Sup. Ct. 336, 27 L. Ed. 201; *Kueteni*

*Valley R. R. Co.,* 28 L. D. 439; *Washington etc. Ry. Co.* v. *Cœur d'Alene R. R. Co.,* 52 Fed. 765.

The fact that the Phœnix Company had acquired a right of way on the south side of the river in October, 1902, is fatal to its acquiring any rights over the ground in dispute prior to the filing of its relinquishment of said south side right of way. *Railroad Company* v. *Dunmeyer,* 113 U. S. 629, 5 Sup. Ct. 566, 28 L. Ed. 1122; *Land Co.* v. *Griffey,* 143 U. S. 32, 12 Sup. Ct. 362, 36 L. Ed. 64; *Smith* v. *Northern Pacific Co.,* 58 Fed. 516, 7 C. C. A. 397; *Oregon R. R. Co.* v. *Kirkenhall,* 26 L. D. 594.

NAVE, J.—Throughout this opinion, for brevity, the Phœnix and Eastern Railroad Company will be denominated the "Phœnix Company" and the Arizona Eastern Railroad Company the "Arizona Company." The Phœnix Company brought an action against the Arizona Company seeking to establish possession and right of possession of a strip of land, varying from one hundred feet to two hundred feet in width, eighteen miles long, lying on the north side of the Gila River, between Kelvin and Dudleyville, in Pinal County, for use as a right of way for its railroad, and to restrain the Arizona Company from interfering with this possession. It appears from the evidence, however, that the controversy was confined to a strip somewhat less than sixteen miles in length. The Arizona Company traversed this complaint and filed a cross-complaint praying for the same affirmative relief as that sought by plaintiff. The trial court found the facts adversely to plaintiff and entered judgment decreeing the Arizona Company to be entitled to the exclusive possession of the right of way in controversy, and perpetually enjoining the Phœnix Company from taking possession of any part thereof, from constructing or operating a railroad thereon, and from in any manner interfering with, hindering, or delaying the construction or operation, by the Arizona Company, of their line of railroad thereon. The Phœnix Company was duly incorporated and organized, under the laws of this territory, in August, 1901, for the purpose of constructing and operating a railroad from Phœnix to Benson. To secure the benefits of the act of Congress of March 3, 1875, (chap. 152, 18 Stats. 482, 1 Supp. Rev. Stats. 91; U. S. Comp. Stats. 1901, p. 1568,) it

filed with the secretary of the interior a copy of its articles of incorporation, and due proofs of its organization, in July, 1902; and shortly thereafter surveyed, located, and commenced the construction of its road. In compliance with section 4 of the act (18 Stats. 483; U. S. Comp. Stats. 1901, p. 1569) the profile was filed on July 30, 1902, and approved on October 16, 1902. In December, 1903, the Phœnix Company caused surveys to be made which ultimately resulted in the determination to change a portion of its road, as originally located and shown upon this profile, from the south side of the Gila River to the north side thereof. This new way is distant from the former way from eight hundred feet to a mile. By the end of January, 1904, the Phœnix Company had completed fifty-two miles of its road, from Phœnix in an easterly direction, and was operating the same with a daily freight and passenger train. The roadbed was completed and the track laid for an additional fourteen miles and the roadbed partially completed nearly to the strip in controversy. On March 14, 1904, this company filed, in the local land-office at Tucson, Arizona, a profile of its road showing an amended location of the right of way which included the disputed strip, attached to which profile there was, in accordance with the rules of the land-office and in the form prescribed therein, an executed relinquishment of the portion of the right of way on the south side of the Gila River, opposite the strip in controversy, such relinquishment to take effect upon the approval of the new profile. The Arizona Company was incorporated under the laws of the Territory of Arizona on February 16, 1904. It filed a copy of its articles of incorporation and proofs of its organization. The date of that filing is disputed. We do not deem it necessary to determine it. This company was incorporated to construct and operate a railroad from Yuma to Clifton. The strip of land in controversy was so situated as to be reasonably and appropriately the object of location by either of these two companies. The Arizona Company caused a survey to be made along the north side of the Gila River, over the premises in dispute, and filed a profile thereof, in the local land-office in Tucson, Arizona, on March 14, 1904, two hours earlier than the filing by the Phœnix Company of the profile of its amended location.

The complaint and cross-complaint and various supple-

mental pleadings in this suit disclose that each company, when these pleadings were filed, was seeking the approval, by the secretary of the interior, of its profile, and each was resisting the approval of the profile filed by the other. At the time of the trial the secretary had not approved the profile filed by either company; nor, indeed, does it appear that the formal approval of the secretary has been given to either at the date of the writing of this opinion, although it is disclosed in the briefs that the matter has been fully litigated before that officer and his determination has been announced. The Phœnix Company, appellant, though it invoked the jurisdiction of the trial court and sought the relief granted to the appellee, now contends that the trial court did not have jurisdiction to entertain the suit or to grant the relief sought; or if the court had any jurisdiction, that its jurisdiction was limited to the granting of a temporary injunction pending the determination of the proceedings before the secretary of the interior, and that it could not determine the ultimate right of possession and decree a perpetual injunction to protect that possession; and, further, that upon the facts, whatever relief was granted should have been to appellant against appellee, instead of the reverse.

By the act of Congress of March 3, 1875, (chap. 152, 1 Supp. Rev. Stats. U. S. 91, 18 Stats. 482, 483; U. S. Comp. Stats. 1901, pp. 1568, 1569,) it is enacted as follows:—

"Section 1. That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized . . . which shall have filed with the secretary of the interior a copy of its articles of incor-. poration and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road. . . ."

"Sec. 4. That any railroad company desiring to secure the benefits of this act shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land-office for the district where such land is located a profile of its road; and upon approval thereof by the secretary of the interior the same shall be noted upon the plats in said office; and thereafter all such

lands over which such right of way shall pass shall be disposed of subject to such right of way. . . ."

It is urged by the appellee that the grant of this act is available to a corporation by compliance with two conditions: 1. By filing with the secretary a copy of its articles of incorporation and due proofs of its organization; and 2. By filing with the register of the land-office a profile of its road; that the acquisition of the right of way is entirely within the control of the corporation seeking it, irrespective of the approval or disapproval by the secretary of the interior of the profile or of the sufficiency of the articles of incorporation and proofs of organization.  If this contention be well founded it follows that the trial court had jurisdiction of the action and jurisdiction to grant the full measure of relief sought.  These companies having filed copies of their articles of incorporation, due proofs of their organization, and profiles of their roads, if no further act remained to be done, the question which of the two had actually acquired the right of way, and was the owner thereof, would be an appropriate subject of inquiry and adjudication by the court.  Appellee contends, furthermore, that by filing its profile before appellant's profile of amended location was filed, appellee acquired the right of way; that proof of the fact is conclusive of the title and litigation.

For the purpose of determining the jurisdictional question we need not comment at length upon the serious objection to an interpretation of this act which reduces the acquirement of a right of way, as between two companies, to a race for the filing of the profile of its road and which eliminates from practical operation that portion of section 4, *supra,* which contemplates a location of the road and gives an unhurried time after such location for the company to file the profile. The objection to the jurisdiction rests upon the proposition that Congress has created a special tribunal for the decision of questions arising upon the administration of its public-land laws and that this jurisdiction cannot be taken away from it by the courts.  It appears to us that the act of Congress contemplates that for the acquisition of title by a railroad company, the company shall perform three acts: 1. It shall file with the secretary of the interior a copy of its articles of incorporation and due proofs of its organization, thus formally advising all persons interested, and more particularly

the grantor, the United States, that it proposes to avail itself of the grant; 2. It shall locate its road; and 3. It shall file with the register of the land-office for the district where the land is located a profile of its road and secure the approval thereof by the secretary of the interior, thus consummating the acquirement of legal title to the right of way. We do not mean to suggest that the location of the road and the filing of the profile, or, indeed, the performance of all three of the acts, may not, possibly, be simultaneous; nor that the filing of the profile may not in itself be made to operate as a location of the road. Upon these matters we express no opinion. We do not hold that no right is acquired prior to the approval of the profile by the secretary of the interior; on the contrary, rights may be acquired by actual construction of the road although no profile has been filed and although the construction be over land not included in the right of way portrayed upon the profile filed; and such rights will be protected by the courts. *Washington etc. Ry. Co.* v. *Cœur d'Alene Ry. Co.,* 160 U. S. 77, 16 Sup. Ct. 231, 40 L. Ed. 355. But there must be some instant of time at which legal title vests. In construing the act we should note the significance of the expression "thereafter" (that is, after the approval of the profile by the secretary and the noting of same upon the plats in the land-office) "all such lands over which such right of way shall pass shall be disposed of subject to such right of way." This expression is by its implication inconsistent with the theory that the legal title has passed prior to action by the secretary. The legal title vests upon the approval of the profile by the secretary of the interior, and not prior thereto. *Noble* v. *Union R. L. R. R.,* 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123; *Enoch* v. *Spokane etc. R. R. Co.,* 6 Wash. 393, 33 Pac. 966; *Chicago etc. Ry. Co.* v. *Van Cleave,* 52 Kan. 665, 33 Pac. 472; *Larsen* v. *Navigation Co.,* 19 Or. 240, 23 Pac. 974. That title, however, for some purposes at least, relates back to the date of location of the road. *Kinion* v. *Kansas City etc. R. R. Co.,* 118 Mo. 577, 24 S. W. 636; *Rierson* v. *St. Louis etc. Ry. Co.,* 59 Kan. 32, 51 Pac. 901.

It is impossible to ignore the secretary of the interior without evading the plain language of the act. That officer has an important function in the premises. Must he accept for filing under this act a copy of articles showing that the company

is organized to manufacture patent medicines? May not he, in the first instance, determine whether "due" proofs of organization are offered? The act imposes a duty upon the secretary in these matters. *Noble* v. *Union River Logging R. R.*, 147 U. S. 165, 172, 176, 13 Sup. Ct. 271, 37 L. Ed. 123. He should withhold his approval of a profile of a road which appears to have been capriciously made or made for an ulterior purpose. *Buttz* v. *N. P. R. R.*, 119 U. S. 72, 7 Sup. Ct. 100, 30 L. Ed. 330; *St. Paul etc. Ry.* v. *Sage,* 71 Fed. 40, 50, 17 C. C. A. 558. Similarly, therefore, when rival aspirants for the same right of way file profiles, he should approve the profile of but one company; and to the end that he approve that of the company with the superior right, he should examine into the facts. That there can be no review of the action of the secretary in granting or withholding his approval we do not hold. On the contrary, his action may be examined by the courts upon an allegation that it was taken under a mistake of law, or fraudulently, or for other reasons, and adequate relief granted to the person injured. *Johnson* v. *Towsley,* 13 Wall. 72, 20 L. Ed. 485. But, so long as a matter within the jurisdiction of the secretary of the interior is pending before him, courts should not trespass upon the field of his inquiry. This has been conclusively determined recently by the supreme court of the United States in a case quite analogous. *Cosmos Co.* v. *Gray Eagle Co.*, 190 U. S. 301, 23 Sup. Ct. 692, 24 Sup. Ct. 860, 47 L. Ed. 1064. The legal title to the right of way in controversy was at the time of the trial of the case (and as noted above, so far as we are aware, still is) in the United States. A contest between the parties to this suit, with a view to the acquisition of this legal title, was actually pending before the secretary of the interior. Therefore, the trial court should not have anticipated the determination of the secretary by granting to either party the relief sought in its pleadings.

It does not follow, however, that the court was without jurisdiction to entertain an action between these parties with reference to the occupation of the right of way, or to grant some measure of relief to either. Pending the determination by the secretary of the interior of the matters being litigated before him it was proper to make such temporary orders with respect to the occupancy and use of the way in controversy

as upon an inquiry into the facts the ends of equity demanded. The court entered a decree which, in effect, amounts to a determination that the appellee has title to the premises in controversy. For reasons pointed out this was erroneous. Further, the court perpetually enjoined the appellant from taking possession of the premises and from interfering, hindering, or delaying the construction and operation, by the appellee, of a line of railroad thereon. To issue such perpetual injunction was also erroneous. But we may now ascertain whether temporary relief should have been granted to appellee, pending the determination of the litigation before the secretary of the interior and pending further orders of the court, or whether, as appellant contends, such relief should have been granted to appellant. In accordance with our conclusion, we may modify the judgment or enter a different judgment.

It is a matter of public interest to facilitate the construction of railroads through this vast territory. The reasons for this interest, founded in the potency of improved transportation in the development of our resources, need not be elaborated. One of these two companies should be permitted to proceed with the construction of its road over the ground in dispute pending the controversy before the secretary of the interior. Construction of a railroad may properly antedate the filing of the profile thereof. As neither company has yet secured the formal approval of a profile of the section of its road including the strip in controversy, the court not only may, but ought, in the interest of the public as well as in the interest of the company showing a greater immediate equity, by appropriate temporary orders, to protect one of these two companies in the construction of its road.

The testimony in this case, upon each side, is practically uncontradicted. Looking to that testimony we find that the Phœnix Company, in December, 1903, more than two months prior to the incorporation of the Arizona Company, made and staked upon the ground surveys with a view to determining whether the portion of its road lying approximately between Kelvin and Dudleyville were not better located on the north side of the Gila River than on the south side; that not later than January, 1904, its officers reached the determination to locate the road on the north side and abandon

the south side; that thereupon it surveyed and staked upon
the ground a definite way on the north side of the river, and
proceeded to obtain by purchase a right of way over the pat-
ented lands lying on this way.   It acquired by recorded con-
veyances several pieces of such land prior to the incorporation
of the Arizona Company.   Furthermore, prior to the incor-
poration of the Arizona Company, actual work of construc-
tion was commenced by the Phœnix Company on the north
side of the Gila River, and at an expense of from twelve
thousand dollars to fifteen thousand dollars had proceeded
from the river for a distance of a mile or two.   By this time,
also, the Phœnix Company had its road in actual operation
for over fifty miles east of its western terminus, Phœnix, and
to within a few miles of this strip.   It was rapidly and
constantly pushing its work with a force of about two hundred
and forty men.   In this state of affairs, on February 16, 1904,
the Arizona Company was incorporated.   With knowledge of
all of the acts of the Phœnix Company, the Arizona Com-
pany proceeded to make a survey on the north side of the
Gila River, appropriating by such survey the sixteen-mile
strip in controversy and promptly began to interfere with
the grading gangs of the Phœnix Company upon that strip,
and itself set men to work there grading.   As has already been
noted, the Arizona Company filed with the register of the
land-office a profile covering the disputed strip two hours
before the Phœnix Company filed its profile showing this
section of its road as amended.

It is to be observed that of the disputed strip, about five
miles, approximately one third of the whole, in scattered por-
tions, were on private lands acquired or to be acquired from
the patentees thereof, and about ten or eleven miles over
public lands.   The strip in dispute commences at the west line
of section 6, township 4 south, range 14 east, near the town
of Kelvin, about three miles east of the point at which the
Phœnix Company crossed the Gila River.   For a mile after
crossing the river the way of the Phœnix Company runs
east on public land, thence for two miles on private land,
purchased from the patentees, to the point at which the
controversy begins.   Beginning thus at private land, owned
in fee by the Phœnix Company, roughly describing it from
a map in evidence, the disputed strip runs in an easterly

direction at various angles across portions of sections 6, 7, 18, 17, and 20 for a distance of approximately four miles over public land; thence for about one mile on private land in section 21, crossing, however, just prior to leaving that section, perhaps two hundred yards of public land; thence running on private land for about one half mile in section 28; thence again on public land for about one and three fourths miles in sections 28, 27, and 26; thence in section 35 for over one half mile on private land, for one hundred and fifty or two hundred yards on public land, and for one half a mile again on private land; thence for some three miles on public land into the body of section 8, township 5 south, range 15 east, where it runs for one-fourth mile on private land; thence, following it without enumerating the sections, for three-eighths mile on public land, over one-half mile on private land, one-fourth mile on public land, one-fourth mile on private land, a few yards on public land, one-half mile on private land, about one-fourth mile on public land, over one-half mile on private land; thence about one-fourth mile on public land to the end of the disputed strip.

At the trial of the case the Arizona Company expressly "disavowed of record any claim in this action to any premises covered by any of these deeds of right of way" to the private lands on the sixteen-mile strip and similarly disavowed "on the record, any claim to any injunction restraining the Phœnix and Eastern Company from interfering with it on any lands covered by these deeds that are in evidence." At the time of the trial the deeds covered all of the private lands lying upon the strip. Stress is laid, by appellee, upon the words "in this action," used in the disavowal quoted, as implying that in some other action the Arizona Company may seek or is seeking to enforce, by right of eminent domain or otherwise, a claim to these lands also; but the disavowal, nevertheless, is significant in connection with the other facts in the case. The Arizona Company, without waiting to survey from either terminus of its road, surveyed a way remote from each terminus, so as to include these sixteen miles. Moreover, it does not here claim the entire sixteen miles, but claims ten separate, isolated pieces of public land varying in length from a few yards to four miles, and each (excepting only the final one at the east end) beginning and ending in

private land owned in fee by the Phœnix Company. The grading it attempted to do, and sought to be protected in doing, was upon these isolated portions of land. It appears that the reason for thus diligently setting at work, at a point intermediate in its general route, remote from its termini, was to secure an approach to a very important cañon of the Gila River known as the "Box Cañon," the occupancy of which is essential to any railroad which would pass through the mountain range transversely intercepting the general route of the Arizona Company. There was manifested, as is eloquently urged by its counsel, a desire on the part of the appellee "by superior diligence" to obtain the disputed strip, with a view to the effect the obtaining thereof would have upon the obtaining of a right of way through Box Cañon. Paraphrasing the language of the supreme court of the United States in *Railway Co.* v. *Alling*, 99 U. S., at page 475, 25 L. Ed., at page 443, we point out that the right of way over this disputed strip of land is not in itself, and separate from the right of way for the whole of each route, of any special value unless the companies should survey their lines and locate their roads east and west of this strip. The grant contemplated by Congress in the act in question is an entirety as to right of way over all lands lying along the route designated in the charter of each company.

Bearing in mind our conclusion that the title to these isolated pieces of ground is still in the United States, and that the sole matter to be determined is which of these two companies shows the greater equities in support of its claim for temporary possession, it is not at all difficult to conclude that the Phœnix Company was and is entitled to proceed with the construction of its railroad over the disputed premises without interference by the Arizona Company. But it is vigorously urged on behalf of the Arizona Company that this would be a superficial view; that the Phœnix Company is in the position of endeavoring to hold two rights of way at the same time, one on the north side of the Gila River and one on the south side; that upon filing and obtaining the approval of its profile in 1902 it obtained title to the right of way portrayed on that profile, which, for the portion between Kelvin and Dudleyville, was on the south side of the Gila River; that it is not contemplated by the act of Congress

that any company shall thereunder obtain more than one
right of way; that, therefore, the Phœnix Company having
acquired a right of way on the south side of the Gila River is,
not in an equitable position when it seeks also to hold posses-
sion of an additional right of way opposite thereto on the
north side of the river, thus, in effect, preventing the Arizona
Company from occupying either side. In thus stating the
contention we are stating it in the strongest possible light for
the Arizona Company, for it is also a fact in the case that
there is ample available ground on the north side of the river
for the convenient building of a road by either company
without interfering with the other. Were it true that there
are but two available strips along the Gila River in this
vicinity,—to wit, the strip in controversy and the strip oppo-
site thereto covered by the original profile of the Phœnix
Company,—under the circumstances of this case, this fact
would have no bearing on the conclusion to be reached. A
company seeking to avail itself of the benefits of this act of
Congress may change the location of its road, after the ap-
proval of its profile, with due regard for intervening rights.
This has not only been the adopted practice of the interior
department, provided for by rules and forms to be followed
by the company seeking to change its location, but has been
recognized by the supreme court of the United States. *Wash-
ington and I. Ry. Co.* v. *Cœur d'Alene Ry. Co.*, 160 U. S.
77, 97, 16 Sup. Ct. 231, 40 L. Ed. 355.

Much stress is placed on the form of relinquishment of the
right of way on the south side of the river as executed by the
Phœnix Company. This relinquishment, by its terms, was
to take effect upon the approval of the new profile. In pass-
ing it may be observed that the form of the relinquishment
was prescribed by the rules of the department. It is seriously
contended that, since the new profile has not yet been ap-
proved, the Phœnix Company still has title to the old right of
way on the south side of the river; that if it desired to avail
itself of a new route on the north side it should have filed an
absolute and immediate relinquishment of the way on the
south side. There might be much force in this contention if
the Arizona Company had been in any way misled by the
action of the Phœnix Company. But the fact is that the
Arizona Company, at all times since its incorporation, and the

gentlemen who are in control of the company, for long before the incorporation of the company, have been in full possession of all the facts. The Arizona Company knew that the Phœnix Company staked upon the ground a definite surveyed course over the disputed strip; that it purchased private lands lying on the way; that it actually crossed from the south side to the north side of the river and commenced there the construction of its roadbed. The Arizona Company cannot profess to have acquired any rights prior to the time when the Phœnix Company actually passed from the south side and began construction on the north side, nor can it profess to have been misled by the state of the records in the department of the interior. If the United States cannot and does not complain, there is no foundation for the Arizona Company to do so. *Washington and I. Ry. Co.* v. *Cœur d'Alene Ry., supra.* We conclude, therefore, that no relief should have been afforded the Arizona Company in this suit; that the only relief granted should have been by way of an order temporarily restraining the Arizona Company from interfering with the Phœnix Company in the occupancy of the strip in controversy pending the disposition of the controversy before the secretary of the interior and pending further order of the court.

For these reasons, the judgment is reversed, and judgment will be entered in this court granting a temporary restraining order in favor of the appellant and against the appellee as indicated in this opinion; such order to be subject to modification or dissolution by the district court, or the judge thereof, should a change in the situation make such modification or dissolution necessary or proper.

KENT, C. J., SLOAN, J., and CAMPBELL, J., concur.