**BOISE CASCADE CORPORATION, Appellant,**

v.

**UNION PACIFIC RAILROAD COMPANY; San Pedro, Los Angeles and Salt Lake Railroad Company; and the United States of America, Appellees.**

No. 78–1462.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 21, 1980.

Decided July 24, 1980.

Rehearing Denied Sept. 22, 1980.

Robert D. Maack, Salt Lake City, Utah (Harry D. Pugsley and Watkiss & Campbell, Salt Lake City, Utah, on briefs), for appellant.

J. Clare Williams, Salt Lake City, Utah, and Robert L. Klarquist, Washington, D.C. (Anthony C. Liotta, Deputy Asst. Atty. Gen., Washington, D.C., Ronald L. Rencher,

U.S. Atty., Salt Lake City, Utah, and Charles E. Biblowit, Atty., Dept. of Justice, Washington, D.C., on briefs), for appellees.

Before HOLLOWAY, BREITENSTEIN, and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This quiet title dispute presents conflicting claims to a strip of land in Utah claimed by Railroads under a federal right-of-way grant and by a lumber company under mesne conveyances from the State of Utah. The United States is joined because of a possible reversionary interest. The district court granted summary judgment for the defendants. See *Boise Cascade Corp. v. Union Pacific R.R. Co.*, D. Utah, 454 F.Supp. 531. We affirm.

The land is in Section 16, T. 6 South, R. 2 East, Utah County, Utah. Plaintiff-appellant Boise Cascade is the successor in interest of the grantee of a patent by Utah, which claimed ownership of Section 16 as a school section to which it had received title under the Fundamental Enabling Act of July 16, 1894, 28 Stat. 107.

In 1873 Southern Railroad Company constructed a railroad line across part of Section 16. By a series of conveyances defendant-appellee San Pedro, Los Angeles & Salt Lake Railroad Company obtained ownership of the line and later leased it to the defendant-appellee Union Pacific R. Co. The Railroads claim title under the General Right of Way Act of March 3, 1875, 18 Stat. 482, 43 U.S.C. § 934 et seq. They say that they are entitled to a strip 100 feet on each side of the track. The Railroads put up a fence 33 feet on each side of the track center line. The dispute is over a strip between the fence and 67 feet westerly from it. Boise Cascade built a lumber yard and made other improvements within the 67 foot strip.

The 1875 Right of Way Act provides, 43 U.S.C. § 934:

"The right of way through the public lands of the United States is granted to any railroad company * * * which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road."

It is undisputed that the constructing Railroad filed its articles of incorporation and proofs of organization in 1875 and that construction of the tracks was completed in 1873.

The 1875 Act also provides, 43 U.S.C. § 937, that a railroad desiring to take advantage of § 934 shall within a specified time file in the appropriate land office "a profile of its road." Boise Cascade claims that the Railroad in 1875 filed a profile map which shows a center line about 400 feet easterly of the center line of the constructed track. Boise Cascade argues that the profile map controls and the Railroads have only an easement over the land covered by the track with 33 feet on each side as enclosed by the fence.

The Railroads deny the Boise Cascade claim that the profile map designates a center line other than the actual track. This factual dispute does not prevent a summary judgment if, as a matter of law, the Railroads prevail. The district court held that actual construction of the track plus the filing of the specified documents perfected the Railroads' right of way to the extent of 100 feet on each side of the center line of the track.

In *Jamestown and Northern R. Co. v. Jones*, 177 U.S. 125, 130, 20 S.Ct. 568, 570, 44 L.Ed. 698, the Supreme Court rejected a state court's conclusion that the "right of way only became definitely located by the filing of a profile map," and adopted the Interior Department's rulings that "the right of way may be definitely located by the actual construction of the road." The Court said, Id. at 131, 20 S.Ct. at 570:

"The ruling gives a practical operation to the statute, and we think is correct. It enables the railroad company to secure the grant by an actual construction of its road, or in advance of construction by filing a map as provided in section four. Actual construction is certainly unmistakable evidence and notice of appropriation."

See also *Minneapolis, St. Paul, etc., Ry. Co. v. Doughty*, 208 U.S. 251, 258–259, 28 S.Ct. 291, 293–294, 52 L.Ed. 474; *Noble v. Oklahoma City*, 297 U.S. 481, 494, 56 S.Ct. 562, 568, 80 L.Ed. 816; and *United States v. Southern Pacific Trans. Co.*, 9 Cir., 543 F.2d 676, 697.

■ Boise Cascade seeks to distinguish *Jamestown* by the claim that the General Right of Way Act of 1875 operates prospectively and applies only to actual construction after the passage of the Act. In *Jamestown* the railroad was constructed in 1882, after the Act. In the instant case the construction was in 1873, before the Act. The difference is unimportant. Actual construction is notice of location whether it occurs before or after the Act. By accepting the articles of incorporation, the proofs of organization, and the profile map after the passage of the Act, the Secretary of Interior necessarily determined that the Act applied. *Rio Grande Western Ry. Co. v. Stringham*, 38 Utah 113, 110 P. 868, 871, affirmed 239 U.S. 44, 36 S.Ct. 5, 60 L.Ed. 136, reversed on another ground by *Great Northern Ry. Co. v. United States*, 315 U.S. 262, 279, 62 S.Ct. 529, 536, 86 L.Ed. 836. The actions of the Secretary may not be reviewed in this collateral proceeding. We are convinced that the 1875 Act applies to determine the rights of the parties.

Boise Cascade also says that *Jamestown* applies only to unsurveyed lands, and Section 16, involved here, was surveyed when the Railroads' right of way is claimed to have attached. In *Jamestown* the Court noted that the Interior Department decisions dealt with surveyed land and "the only difference which the act of Congress makes between surveyed and unsurveyed land is the provision in section four for filing the profile of the road." 177 U.S. at 132, 20 S.Ct. at 571.

■ Boise Cascade relies on several state court decisions. Two of these, *Chicago, K. & N. Ry. Co. v. Van Cleave*, 52 Kan. 665, 33 P. 472, and *Kinion v. Kansas City, Ft. S. & M.R. Co.*, 118 Mo. 577, 24 S.W. 636, were decided before *Jamestown*. *Minneapolis, St. Paul, etc., Ry. Co.*, supra, 208 U.S. at 258, 28 S.Ct. at 293, noted the split among lower courts before *Jamestown*. *Phoenix & E. R. Co. v. Arizona Eastern R. Co.*, 9 Ariz. 434, 84 P. 1097, 1099, appeal dismissed, 207 U.S. 601, 28 S.Ct. 258, 52 L.Ed. 359, supports the Railroads as it recognizes that rights may be acquired by actual construction even though the construction is over land not included in the right of way portrayed in the filed profile.

■ The next issue is whether the claim of the Railroads is defeated by the Utah patent through which Cascade claims. The Utah title is derived from the Fundamental Enabling Act of July 16, 1894, 28 Stat. 107, which granted Section 16 in each township to Utah for support of the public schools. The difficulty is that the Enabling Act provides, § 13, 28 Stat. 110, that the lands granted to the State "shall be selected under the direction of the Secretary of the Interior from the unappropriated public lands of the United States within the limits of said State of Utah." The disputed land was appropriated by the Railroads under the 1875 General Right of Way Act.

*Wyoming v. Udall*, 10 Cir., 379 F.2d 635, 640, cert. denied 389 U.S. 985, 88 S.Ct. 470, 19 L.Ed.2d 479, in discussing the Wyoming Enabling Act, said:

> " * * * the congressional intent was that if part of any section to be granted for school purposes had been disposed of under an act of Congress, the state on admission did not get that part of the section."

Boise Cascade seeks to limit the precedential value of the *Wyoming* case on the ground that it applied only to pre-1871 grants. That distinction applies to another aspect of the decision and does not affect its discussion of grants of school sections.

■ Boise Cascade next claims by reason of adverse possession, abandonment, estoppel, and boundary by acquiescence. It emphasizes that the Railroads have not fenced the entire 100 feet claimed on each side of the center line and have been aware of the occupation by Boise Cascade. A factual dispute concerns the payment of taxes.

These claims are all irrelevant. In *Northern Pacific Ry. Co. v. Townsend*, 190 U.S. 267, 271–272, 23 S.Ct. 671, 673, 47 L.Ed. 1044, the Court noted that in granting the right of way Congress conclusively determined the strip covered was necessary for an important public work and said:

> "The whole of the granted right of way must be presumed to be necessary for the purposes of the railroad, as against a claim by an individual of an exclusive right of possession for private purposes."

See also *Northern Pacific Railroad Co. v. Smith*, 171 U.S. 260, 275, 18 S.Ct. 794, 799, 43 L.Ed. 157, and *Himonas v. Denver & R.G.W.R. Co.*, 10 Cir., 179 F.2d 171, 173. The question of abandonment of the land covered by the profile map, see 43 U.S.C. § 937, is of no concern as Boise Cascade claims no right to that land.

■■■ Boise Cascade also asserts rights under various state statutes. It claims to be a bona fide purchaser under § 57–3–2, Utah Code Anno., to be protected by the Occupying Claimants Act, § 57–6–1 et seq., and to have superior title under the Marketable Record Title Act, § 57–9–1 et seq. Section 57–9–6 of the latter Act says that it does not apply to extinguish a railroad easement. It is enough to say that state law cannot operate to "impair the efficacy" of a federal grant or vest title in someone other than the federal grantee. See *Packer v. Bird*, 137 U.S. 661, 669, 11 S.Ct. 210, 211, 34 L.Ed. 819; *Shively v. Bowlby*, 152 U.S. 1, 44, 14 S.Ct. 548, 564, 38 L.Ed. 331; and *Northern Pacific Ry. Co. v. Townsend*, 190 U.S. 267, 270, 23 S.Ct. 671, 672, 47 L.Ed. 1044.

The United States, which was joined as a party because of a possible reversionary interest, moved to dismiss on jurisdictional grounds. Because of its grant of summary judgment for the defendants, the district court did not consider the jurisdictional issue. In this court the United States asks that the district court judgment be affirmed but claims that the action against the United States is barred by the Quiet Title Act, 28 U.S.C. § 2409a. See *Amoco Production Co. v. United States*, 10 Cir., 619 F.2d 1383 (1980). In the circumstances presented, resolution of the point is unnecessary.

Affirmed.