**CALHAN CHAMBER OF COMMERCE,**
a Colorado nonprofit corporation,
Plaintiff–Appellant,

v.

**TOWN OF CALHAN, Colorado; Pikes Peak Cooperative Association; David Baysinger; and Pamela Baysinger,** Defendants–Appellees.

No. 05CA2035.

Colorado Court of Appeals,
Div. III.

May 3, 2007.

Thomas G. Martin, P.C., Thomas G. Martin, Colorado Springs, Colorado, for Plaintiff–Appellant.

Walter S. Rouse, P.C., Walter S. Rouse, Colorado Springs, Colorado, for Defendant–Appellee.

Town of Calhan May and Associates, P.C., Mary Ann Foster, Mark E. May, Centennial, Colorado, for Defendants–Appellees Pikes Peak Cooperative Association, David Baysinger, and Pamela Baysinger.

Opinion by Judge ROMÁN.

In this quiet title action, plaintiff, Calhan Chamber of Commerce, appeals the summary judgment in favor of defendants, Town of Calhan, Pikes Peak Cooperative Association, David Baysinger, and Pamela Baysinger (collectively the Town). We affirm.

The Chamber of Commerce filed a complaint seeking to quiet title and for declaratory judgment against the Town concerning the ownership of four noncontiguous parcels of land that were once part of the Chicago, Rock Island, and Pacific Railroad Company (Rock Island) right-of-way.

The land was originally granted to Rock Island under the General Railroad Right of Way Act of 1875. On May 23, 1980, the Interstate Commerce Commission (ICC) recommended Rock Island's "total system discontinuance of services and abandonment" subject only to service continuity by other carriers at certain defined points not at issue here. On June 2, 1980, the federal district court entered an order that "the total systems abandonment of Rock Island's lines and

the discontinuance of all of its rail services and obligations as a common carrier [are] hereby confirmed and decreed" consistent with the ICC recommendations.

On May 29, 1984, the federal district court entered another order allowing the sale of the property at issue here by quitclaim deed to a third party. The Chamber of Commerce claims ownership of the property through subsequent conveyances originating from this quitclaim deed.

The Town claims ownership by operation of the Railroad Right of Way Abandonment Act, 43 U.S.C. § 912, which provides that after a court order decrees abandonment of a railroad grant, title to property located within a municipality automatically vests in that municipality. The other defendants were named in the Chamber of Commerce's complaint because they use the disputed property to access their adjacent property. However, they do not assert any ownership interest in the disputed property.

The Chamber of Commerce and the Town filed cross-motions for summary judgment. The trial court entered summary judgment in favor of the Town, concluding that the property "vested in the Town of Calhan in fee simple, to the exclusion of all other interests."

A trial court may enter summary judgment when no disputed issue of material fact exists and the moving party is entitled to judgment as a matter of law. We review summary judgments de novo. C.R.C.P. 56(c); *McIntyre v. Bd. of County Comm'rs*, 86 P.3d 402, 406 (Colo.2004).

I.

The Chamber of Commerce contends the trial court erred in concluding that Rock Island had irrevocably abandoned the railroad line. We disagree.

As relevant here, § 912 provides:

Whenever public lands of the United States have been ... granted to any railroad company for use as a right of way for its railroad ... and use and occupancy of said lands for such purposes has ceased ... whether by forfeiture or by abandonment by said railroad company declared or decreed by a court of competent jurisdiction ..., then and thereupon all right, title, interest, and estate of the United States in said lands shall ... be transferred to and vested in any person, firm, or corporation ... to which title of the United States may have been granted ..., except lands within a municipality[,] the title to which, upon forfeiture or abandonment, as herein provided, shall vest in such municipality ... and this by virtue of the patent thereto and without the necessity of any other or further conveyance or assurance of any kind or nature whatsoever....

■ Here, it is undisputed that (1) the Town is a municipality and holds a patent from the United States Land Office to the underlying fee simple estate; (2) the abandoned right-of-way is located within the Town's municipal boundaries; and (3) in 1980 the federal district court ordered "the total systems abandonment of Rock Island's lines and the discontinuance of all of its rail services and obligations as a common carrier" consistent with "the recommendations of the [ICC] pertaining to the transfer, sale or disposition of track and trackage rights contained" in the ICC report.

Therefore, by the express language of § 912, upon the federal district court's decree of abandonment in 1980, title to the land vested in the Town. *See also City of Maroa v. Ill. Cent. R.R.*, 229 Ill.App.3d 503, 170 Ill.Dec. 224, 592 N.E.2d 660 (1992); *City of Buckley v. Burlington N.R.R.*, 106 Wash.2d 581, 723 P.2d 434, 437–38 (1986)(if the right-of-way runs through a municipality, the municipality takes the reversion regardless of whether it has title to the underlying fee). This automatic vesting of title occurs "without the necessity of any other or further conveyance or assurance of any kind or nature whatsoever." 43 U.S.C. § 912; *see City of Buckley v. Burlington N. R.R., supra*, 723 P.2d at 436 (§ 912 was enacted to dispose of the federal government's reversionary interests in the railroad rights-of-way).

Nevertheless, the Chamber of Commerce argues that the federal court's abandonment order merely contemplated a temporary abandonment of the railroad line pending

sale and that the order does not mention the possibility of reversion to the Town. However, nothing in the language of the ICC recommendations or the court order regarding abandonment indicates that abandonment was to be temporary or revocable.

Even if the Chamber of Commerce were correct that the court anticipated future orders regarding the property, we find no inconsistency between the federal court's 1980 order decreeing abandonment and its 1984 order authorizing the sale of the railroad line between two cities. In the 1984 order, the court authorized the bankruptcy trustee to sell miles of railroad line, of which only a small portion is located within the municipal boundaries of the Town, and therefore subject to reversion under § 912.

Because § 912 is self-executing and title automatically vested in the Town, we reject the Chamber of Commerce's argument that another railroad's later use of the railroad lines is de facto evidence of lack of abandonment. While use of the railroad lines may be relevant to determine whether abandonment has occurred by forfeiture, it does not negate the effect of the 1980 judicial decree of abandonment under § 912. *See In re Chicago, Rock Island & Pac. R.R.*, 865 F.2d 807, 813 (7th Cir.1988)(use by other operators cannot prevent the reversion clause in § 912 from being triggered).

The Chamber of Commerce relies on *Northern Pacific Railway v. Townsend*, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044 (1903), for the proposition that the railroad's interest constituted a limited fee. However, the Supreme Court disavowed that holding in *Great Northern Railway v. United States*, 315 U.S. 262, 277, 62 S.Ct. 529, 535, 86 L.Ed. 836 (1942), where it held that the General Railroad Right of Way Act of 1875 only granted railroads an easement. *See also Bijou Irrigation Dist. v. Empire Club*, 804 P.2d 175, 181–82 (Colo.1991) (recognizing the Supreme Court's holding in *Great N. Ry.* that railroads were granted an easement instead of a limited fee).

Similarly, *Boise Cascade Corp. v. Union Pacific Railroad*, 630 F.2d 720 (10th Cir. 1980), is inapposite. In that case, a quiet title action was brought because a dispute arose based on a discrepancy between the right-of-way recorded in the official profile map and the location where actual construction occurred. The court held that in resolving that case, "[t]he question of abandonment of the land covered by the profile map ... is of no concern as Boise Cascade claims no right to that land." *Boise Cascade Corp., supra*, 630 F.2d at 724.

▪ In reaching our conclusion, we do not consider the Chamber of Commerce's argument that summary judgment is inappropriate because a dispute of material fact exists regarding whether the abandonment order indicates that "any subsequent transfer or sale would take priority over the abandonment." This issue is raised for the first time in the Chamber of Commerce's reply brief. *See Schempp v. Lucre Mgmt. Group, LLC*, 75 P.3d 1157, 1165 (Colo.App.2003); *see also City of Golden v. Parker*, 138 P.3d 285, 289 (Colo.2006) (issue not raised in trial court will not be addressed on appeal).

Accordingly, we conclude the trial court correctly ruled that Rock Island had irrevocably abandoned the railroad line.

## II.

The Chamber of Commerce also contends that the trial court erred in concluding that the subsequent order allowing use of the railroad line had no effect on the issue of abandonment. Again, we disagree.

▪ The trial court found that (1) the 1984 order approving the sale of the property did not affect the Town's title "because the property at issue had already been transferred to the Town of Calhan by operation of law"; (2) "[a]t no time did [Rock Island] hold an estate in fee to the property over which its lines operated, rather than a 'right of way' or 'right of use' over such property'; and (3) "[s]uch right of way did not constitute property which could be transferred after abandonment."

As previously discussed, upon the federal district court's decree in 1980 that Rock Island abandoned the railroad line, title automatically vested in the Town pursuant to § 912. Therefore, Rock Island possessed no

property interest in the right-of-way that it could have conveyed. *See In re Chicago, Rock Island & Pac. R.R., supra,* 865 F.2d at 813. By agreeing to purchase the property through a quitclaim deed, the Chamber of Commerce's predecessor in interest accepted the risk that it might have received defective interests in the right-of-way. *See In re Chicago, Rock Island & Pac. R.R., supra,* 865 F.2d at 816; *see also Black's Law Dictionary* 424 (7th ed.1999) (defining "quitclaim deed" as "a deed that conveys a grantor's complete interest or claim in certain real property but that neither warrants nor professes that the title is valid").

■ To the extent the Chamber of Commerce attempts to challenge the abandonment decree of the federal district court based on the ICC's jurisdiction, that argument is untimely. *See* 28 U.S.C. § 1336(c) (requiring challenges to ICC orders be brought within ninety days); Fed. R.App. P. 4(a)(1)(A) (requiring appeals of district court orders to be filed within thirty days).

We also need not consider the Chamber of Commerce's preemption argument because we conclude the order decreeing abandonment and the order allowing the sale of Rock Island's railroad lines are not inconsistent.

Accordingly, we agree with the trial court that the 1984 order allowing use of the railroad line had no effect on the issue of abandonment.

### III.

The Chamber of Commerce further contends that the trial court erred by not addressing its estoppel and laches claims that the Town (1) failed to assert its ownership rights after 1980; and (2) recognized other ownership interests by leasing and purchasing property along the railroad line. We disagree.

Findings of fact and conclusions of law are unnecessary on decision of motions under C.R.C.P. 12 or 56. C.R.C.P. 52; *United Bank v. Ferris,* 847 P.2d 146, 150 (Colo.App. 1992).

■ A party asserting equitable estoppel must prove that (1) the party to be estopped knew the facts and intended that its representation be acted on so that the other party is justified in relying upon the represented facts; (2) the party asserting estoppel was ignorant of the actual facts; and (3) the party asserting estoppel reasonably relied, to its own detriment, on the other party's conduct or misrepresentation. *Black v. Sw. Water Conservation Dist.,* 74 P.3d 462, 467 (Colo. App.2003).

■ The doctrine of laches is an affirmative defense requiring a showing that a party's unconscionable delay in enforcing its rights has prejudiced the party against whom relief is sought. *Superior Constr. Co. v. Bentley,* 104 P.3d 331, 334 (Colo.App.2004). The doctrine generally requires a change in position relative to the subject matter of the litigation rendering it inequitable for the party asserting his or her rights to succeed. *Minto v. Lambert,* 870 P.2d 572, 577 (Colo. App.1993).

■ The prejudice required to establish the defense of laches must result from reliance on the actions of the opposing party that is justifiable under the circumstances of the case considered as a whole. *City of Thornton v. Bijou Irrigation Co.,* 926 P.2d 1, 74 (Colo.1996).

■ However, pursuant to § 912, we have concluded the Town automatically received title without the necessity of any other or further conveyance or assurance of any kind or nature whatsoever. Because the Town had no duty to assert its right to the property either before acquiring title, *see* § 912, or during its peaceful possession, *see Great W. Reservoir & Canal Co. v. Farmers Reservoir & Irrigation Co.,* 109 Colo. 218, 222, 124 P.2d 753, 754 (1942), it cannot suffer any prejudice for having failed to do so.

In addition, the six documents relied upon by Chamber of Commerce for its assertion that the Town recognized other ownership interests do not support such an assertion. Four of the documents predate the 1980 reversion under § 912, one document does not include the Town as a party, and one document relates to land located outside of the Town's municipal boundaries, which is not affected by § 912. Therefore, the Chamber

of Commerce failed to allege any facts supporting its assertion that the Town acknowledged other ownership interests. *See* C.R.C.P. 56(c) (summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, affidavits, and admissions show that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law); *Civil Serv. Comm'n v. Pinder*, 812 P.2d 645 (Colo.1991) (the party moving for summary judgment may satisfy its burden by demonstrating an absence of evidence in the record to support the nonmoving party's case); *see also Black v. Sw. Water Conservation Dist., supra; City of Thornton v. Bijou Irrigation Co., supra.*

Accordingly, we conclude the record shows no disputed issue of material fact concerning laches or estoppel that would require us to disturb the summary judgment.

The judgment is affirmed.

Judge ROTHENBERG and Judge TAUBMAN concur.