## JAMESTOWN AND NORTHERN RAILROAD COM-PANY *v.* JONES.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH DAKOTA.

No. 142. Argued February 1, 1900.—Decided March 26, 1900.

Under the act of March 3, 1875, c. 152, "granting to the railroads the right of way through the public lands of the United States," such grant to the plaintiff in error took effect upon the construction of its road.

THIS suit was brought by plaintiff in error to have itself ad-judged the owner of a right of way over the northwest quarter of section eight, in township one hundred and forty-one, of range 64, in the county of Stutsman, State of North Dakota.

Its title rests upon the act of Congress of March 3, 1875, c. 152, 18 Stat. 482, entitled, "An act granting to railroads the right of way through the public lands of the United States."

The plaintiff was organized September 17, 1881, under the laws of the Territory of Dakota. After its organization it sur-veyed a line of route for its railroad from a point near James-town in a northwesterly direction through the county of Stuts-man and over the land in controversy. The survey was finished the 30th of October, 1881. A map representing the survey was made by a resolution of the board of directors, and was adopted as the definite route of the railroad.

In 1882 the road was constructed upon the line surveyed, and since that time trains have been continuously run over it by the plaintiff.

On the 26th of January, 1883, the plaintiff filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same. On the 13th of March, 1883, plaintiff's map of definite location was filed and approved by the Secretary of the Interior. There was some uncertainty in the evidence whether such map was ever filed in the office of the register of the local land office, but it probably was.

On the 12th of February, 1881, the land then being public land of the United States, duly surveyed, one Sherman Jones filed a declaratory statement upon it, alleging settlement the 8th of February, 1881. On the 13th of March, 1883, it had not been cancelled or vacated.

On the 26th of May, 1882, one William S. King filed a declaratory statement on the land, which on the 13th of March, 1883, had not been cancelled.

In addition to the above the trial court found the following facts:

"On the 7th day of March, A. D. 1883, one Ella Sharp filed in said land office an application to be allowed to enter said tract under the homestead law, together with the affidavit required by law. Said application was received and entered at said land office and continued in force until, on the 21st day of November, 1892, it was cancelled at said land office by relinquishment.

"On the 23d day of February, A. D. 1883, the defendant, T. J. Jones, was a citizen of the United States and over the age of twenty-one years. On that day, intending to purchase said tract under the preëmption laws, he built a house thereon; on the 3d day of March of said year he commenced living in said house, and from that day continuously to the present has resided on said land and has cultivated and improved the same. On June 5, 1883, he filed in said land office at Fargo a declaratory statement under the preëmption law, alleging settlement on said land on March 3, 1883. He afterward applied to said land office to be allowed to make proof under his declaratory statement, but owing to the existence of said prior homestead entry of Ella Sharp said application was refused. In November, 1892, he secured from said Ella Sharp a relinquishment of her homestead entry, and on the 21st day of November, 1892, the same date said entry was canceled by relinquishment, he made application to said land office to be allowed to change his preëmption entry upon said tract into a homestead entry. Said application was received at said land office, the entry allowed and numbered 20,234, and a receiver's receipt bearing the same number issued to said defendant. Afterward, on the 21st day

of January, A. D. 1893, he made final proof for said land under the homestead law, and on February 18, 1893, a final receiver's receipt, numbered 7233, was issued to him by said land office at Fargo. On the 26th day of May, 1893, a patent in due form, whereby the United States conveyed and granted said land to said defendant, was issued to and received by him. There was not in said receiver's receipt or final certificate, or in said patent for said tract, a reservation of any vested or accrued right, claim or interest to said land on the part of the plaintiff or of any person or corporation under the act of Congress of March 3, 1875. At the time defendant settled upon said land plaintiff was and ever since has been engaged in operating a line of railroad thereover.

" The plaintiff has not at any time instituted proceedings or resorted to any process whatever under state or Federal laws to condemn a right of way across said land or to divest defendant of his title or any possessory right that he might have to said land.

" Plaintiff has taken for its use as a right of way upon said land a strip one hundred feet wide, being fifty feet on each side of the central line of its railroad tract, and extending diagonally across said land from a point about the middle of its south boundary to a point near its northwest corner. Said strip includes about six acres of said land. The land not taken is divided into two unequal parts and its value for farming purposes decreased. Trains of cars are drawn by plaintiff over and across said land every day, and the crop on defendant's land is injured by smoke from said railroad, and his buildings and crops subjected to increased hazard of destruction by fire. By the taking of said strip for a right of way and the construction and operation of a railroad thereon the said land is depreciated in value in the sum of three hundred dollars.

" Defendant has not at any time consented to the taking or use of said land by plaintiff, and has not received any compensation for said taking or for the injury and damage inflicted thereby."

As conclusions of law the court found that no right of way accrued until March 13, 1883, the date of the filing of the pro-

file map of the road; that prior to that time the land had ceased to be public land by reason of the preëmption and homestead entries which had been filed upon it; that the defendant, T. J. Jones, was the owner in fee of said land without reservation of any kind, and that his title related back to February 23, 1883, the date of his settlement thereon.

Judgment was entered dismissing plaintiff's cause of action, awarding the defendant three hundred dollars, and costs taxed at $24.65, and that "upon the payment to the defendant of the sum of three hundred dollars and the costs of this action there shall vest in the plaintiff, Jamestown and Northern Railroad Company, and its successors and assigns, the full legal title to that portion of the northeast quarter of section 8, township 141, range 64, used by it as a right of way, to wit, fifty feet on each side of the center line of said railroad, as the same has been heretofore constructed and is now located and operated through said land by said plaintiff."

Upon appeal to the Supreme Court of the State the judgment was affirmed (7 N. D. 619) and this writ of error was then sued out.

*Mr. A. B. Browne* for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE McKENNA, after stating the case, delivered the opinion of the court.

In the summer of 1882 the plaintiff in error constructed its railroad across the land in controversy, and the finding of the court is that "at the time defendant settled upon said land plaintiff was and ever since has been engaged in operating a line of railroad thereover."

The defendant nevertheless was awarded three hundred dollars damages, and the plaintiff adjudged to have acquired no rights whatever by the construction of its road.

The act of 1875, upon which plaintiff relies, is as follows:

"That the right of way through the public lands of the

United States is hereby granted to any railway company duly organized under the laws of any State or Territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proof of its organization under the same, to the extent of one hundred feet on each side of the central line of said road;

"Also the right to take from the public lands adjacent to the line of said road, material, earth, stone and timber necessary for the construction of said railroad;

"Also ground adjacent to such right of way for station buildings, depots, machine shops, side tracks, turnouts and water stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road.

 &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"SEC. 3. That the legislature of the proper territory may provide for the manner in which private lands and possessory claims on the public lands may be condemned; and where such provision shall not have been made, such condemnation may be made in accordance with section 3 of the act entitled 'An act to aid in the construction of a railroad and telegraph line from the Missouri River to the Pacific Ocean, and to secure to the government the use of the same for postal, military and other purposes, approved July 1, 1862,' approved July 1, 1864.

"SEC. 4. That any railroad company desiring to secure the benefits of this act shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way: *Provided,* That if any section of said road shall not be completed within five years after the location

of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road.

"SEC. 5. That this act shall not apply to any lands within the limits of any military park or Indian reservation, or other lands especially reserved for sale. . . ."

There is some uncertainty in the act. Its first section is expressed in words of present grant, but there is no definite grantee. We said in *Hill* v. *Russell*, 101 U. S. 503, 509: "There cannot be a grant unless there is a grantee, and consequently there cannot be a present grant unless there is a present grantee." And it was further said that in all cases where a grant was given a present effect, a State or some other corporation having all of the qualifications specified in the act had been designated as a grantee. In other words, when an immediate grant was intended an immediate grantee having all the requisite qualifications was named. In *Noble* v. *Railroad Co.*, 147 U. S. 165, we said: "The language of that section is 'that the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any State or Territory,' etc. The uniform rule of this court has been that such an act was a grant *in præsenti* of lands to be thereafter identified. *Railway Co.* v. *Alling*, 99 U. S. 463."

This case establishes that a railroad company becomes specifically a grantee by filing its articles of incorporation and due proofs of its organization under the same with the Secretary of the Interior. It was also so held by Mr. Secretary Vilas in *Dakota Central Railroad Co.* v. *Downey*, 8 Land Decisions, 115.

But what constitutes a definite location of the right of way? Upon the answer to that question the present controversy hinges. The State courts decided, as we have seen, that the right of way only became definitely located by the filing of a profile map of the road. The contention of the plaintiff in error is that the right of way may be definitely located by the actual construction of the road. And this was the ruling of the Interior Department in *Dakota* v. *Downey*, *supra*, and the ruling has been subsequently adhered to. *St. Paul, Minneap-*

*olis & Manitoba Ry. Co.* v. *Maloney et al.*, 24 Land Decisions, 460; *Montana Central Rd. Co.*, 25 Land Decisions, 250; *St. Paul & Minneapolis Ry. Co.*, 26 Land Decisions, 83.

The ruling gives a practical operation to the statute, and we think is correct. It enables the railroad company to secure the grant by an actual construction of its road, or in advance of construction by filing a map as provided in section four. Actual construction of the road is certainly unmistakable evidence and notice of appropriation.

Secretary Vilas said in *Dakota Central R. R. Co.* v. *Downey:*

"As to the roadway the construction of the road fixes the boundaries of the grant, and fixes it by the exact rule of the statute. . . . This must undoubtedly be the rule when the road is constructed over unsurveyed lands, because then every condition necessary to the vigor of the present grant is complied with. The fact that the railroad company may locate and construct its road upon unsurveyed lands is clearly recognized in the fourth section of the act; and the regulations of the department have been made to apply to such cases, and authorize such construction.

"It seems to me that the fourth section of the act was written for another purpose and for another case. It relates to a case of a railroad company which desires to secure the present grant, and give to it fixity of location, *before* its road shall be constructed; and it is designed to provide a similar privilege in respect to rights of way which acts granting lands to aid in the construction of railroads have provided — namely, the privilege of giving fixity of location to the subject of the grant *before* construction of the road.

\* \* \* \* \* \* \* \*

"It does not become necessary for a road which has secured the benefits of this act, by taking the steps which give it the attitude of being named in the first section as a grantee, and by building a road through the public lands, whereby the subject of the grant has been defined, to file a map of definite location in order to entitle it to the benefits of the right of way.

"The fourth section is designed to provide a mode by which fixity of location can be secured to a grantee, *in anticipation*

of that construction by which location is defined in the section making the grant, and which shall have the effect, before the construction of the road, which the terms of the grant limit to the ' central line of said road,' which only means — without the fourth section — a *constructed* road." .

This decision and the subsequent decisions of the Interior Department were concerned with cases of construction on unsurveyed land, but we think the power applies also to surveyed lands. The only difference which the act of Congress makes between surveyed and unsurveyed land is the provision in section four for filing the profile of the road.

It follows from these views that the grant to plaintiff in error by the act of 1875 became definitely fixed by the actual construction of its road, and that the entry of the defendant in error was subject thereto.

This conclusion does not conflict with the doctrine announced in *Van Wyck* v. *Knevals*, 106 U. S. 360, and in *Kansas Pacific Railway Co.* v. *Dunmeyer*, 113 U. S. 629, that the title to lands passing under railroad land grants is considered as established at the date of the filing of the map of definite location. The same question is not here presented. Different considerations apply to the grant of lands than to the grant of the right of way.

> *The judgment of the Supreme Court of North Dakota is therefore reversed, and the case is remanded for further proceedings not inconsistent with this opinion.*