GEORGE B. MORAN, APPELLANT, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLEE.

FILED MARCH 5, 1909. No. 15, 533.

1. **Public Lands: RAILROADS: HOMESTEAD: PRIORITIES.** September 24, 1886, the secretary of the interior approved the line of survey made by the Grand Island & Wyoming Central Railroad Company for the building of its road in Grant county, Nebraska, and a map of the approved survey was, by direction of the secretary,

sent by the commissioner of the general land office to the district land office and there filed November 13, 1886. *Held,* That under the act of congress of March 3, 1875, any party entering public lands, over which said survey extended, as a homestead or otherwise, after such approved map was filed in the district land office, took the land subject to a right of way for the building of the road, such right of way extending 100 feet from the center of its track on each side thereof.

2. ———: RAILROADS: RIGHT OF WAY. The fact that the profile of its surveyed line was sent directly to the secretary of the interior by the president of the railroad company, instead of being transmitted to him through the district land office, is immaterial.

3. Railroads: EASEMENT: ADVERSE POSSESSION. "The use for agricultural purposes, such as grazing and cultivation by adjoining landowners of otherwise unused and unfenced parts of the right of way of a railroad company, is not inconsistent with or adverse to the enjoyment of the easement." *Roberts v. Sioux City & P. R. Co.,* 73 Neb. 8.

APPEAL from the district court for Grant county: JAMES N. PAUL, JUDGE. *Affirmed.*

*Sullivan & Squires,* for appellant.

*J. E. Kelby, Frank E. Bishop* and *Arthur R. Wells,* contra.

DUFFIE, C.

The facts stipulated by the parties disclose that one Fitzpatrick on the 18th of December, 1886, made homestead entry of the northwest quarter of the southeast quarter, and the northeast quarter of the southwest quarter, and lots 3 and 4, section 19, township 24, range 36, in Grant county, Nebraska. He departed this life while living upon the land, and his heirs in due time made final proof in support of his entry, residence and cultivation, and a patent was issued to them embracing the whole of the above described lands without reservation or condition. The heirs afterwards conveyed the land to the plaintiff herein, who is now in possession.

In April, 1886, the Grand Island & Wyoming Central Railroad Company surveyed a line for a proposed road

over the land hereinbefore described, and after said survey the said company transmitted by mail to the secretary of the interior at Washington a map of the survey of the proposed line. On September 24, 1886, the secretary of the interior approved the line of survey, and on October 12, 1886, the commissioner of the general land office, by direction of the secretary, advised the president of the company that the secretary had approved the line of survey, and that copies of the maps had been sent to the register and receiver of the local land office with necessary instructions. These maps were received at the local office November 13, 1886, and the register, in acknowledging receipt of the maps, informed the commissioner of the general land office "that said line of route has been duly marked upon the records of this office in consonance with instructions contained in circular dated January 7, 1880." The action of the railroad company in sending a map of the location of its survey and route was for the purpose of acquiring a right of way over the public lands under the act of congress of March 3, 1875 (18 U. S. Statutes at Large, p. 482. ch. 152). The first section of this act granted to any railroad company, duly organized under the laws of any state or territory, except the District of Columbia, or by the congress of the United States, the right of way over the public lands to the extent of 100 feet on each side of the central line of said road. The fourth section of the act defines the steps to be taken to obtain its benefits, and is as follows: "That any railroad company desiring to secure the benefits of this act shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the secretary of the interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of

subject to such right of way: *Provided,* That if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road." During the year 1887 the Grand Island & Wyoming Central Railroad Company constructed its road over the land in question, and thereafter built fences on each side of its track and distant 25 feet from the central line thereof, thus including a strip 50 feet wide. The remainder of the 200 feet right of way, being 75 feet on each side of the track, was used by the plaintiff and his grantors in connection with the adjoining land from the time the railroad fence was built up to a short time before this suit was begun, when the defendant company was about to take possession of all of its right of way, whereupon the plaintiff commenced this suit and applied for an injunction to restrain the defendant from taking any part of the 200 feet strip claimed as its right of way and lying outside its fences. On the final hearing the temporary injunction issued on the plaintiff's application was dissolved and his petition dismissed. From this judgment he has appealed.

By reference to the fourth section of the act of March 3, 1875, it would seem that the regular course of proceeding by a railroad company seeking to obtain a right of way over the public lands of the United States was to file a profile of its line in the land office of the district where its line was located, and this profile would be transmitted by the register and receiver to the secretary of the interior for his approval. If the secretary of the interior approved the line of survey, the map would be returned to the district land office, and when there filed all public lands thereafter disposed of, crossed by the survey, would be taken subject to the right of way granted to the railroad company. If we understand the contention of the appellee, it is to the effect that the Grand Island & Wyoming Central Railroad Company did not comply with the act of congress, in that it sent the map of its survey directly to

the secretary of the interior, instead of having it trans-
mitted to him by the officers of the district land office.
This we regard as wholly immaterial.    Before the railroad
company could acquire a right of way over the public
lands, a map of its survey had to be approved by the secre-
tary of the interior, and, before parties entering public
lands could be in anywise affected by any claimed right
of way, the approved map had to be returned and filed in
the local land office.    When this was done, parties enter-
ing public lands over which the approved survey was made
took these lands burdened with the right of way granted
by the general government, and, while they had to pay
for the whole tract, the right of way was legally vested in
the railroad company.    That subsequent entrymen took
the land subject to the rights of the railroad company is
apparent from the provisions of section 4 of the act, and
has been expressly ruled in *Jamestown & N. R. Co. v.
Jones,* 177 U. S. 125; *Northern P. R. Co. v. Townsend,* 190
U. S. 267; *Minneapolis, St. P. & S. S. M. R. Co. v. Doughty,*
208 U. S. 251.

In a circular issued by the department of the interior
and found in 12 Land Dec. 428, the following rule was
announced:   "All persons settling on public lands to
which a railroad right of way has attached take the same
subject to such right of way and must pay for the full area
of the subdivision entered, there being no authority to
make deductions in such cases."   The interior department
has also held that it was improper to include in the patent
issued any exceptions making the grant subject to a rail-
way right of way acquired under the act of 1875.   *Dunlap
v. Shingle Springs & P. R. Co.,* 23 Land Dec. 67; *Oregon
S. L. R. Co. v. Harkness,* 27 Land Dec. 430; *Denver & R.
G. R. Co. v. Clack,* 29 Land Dec. 478.   The fact that the
patent issued by the general government for the tract of
land conveyed to the plaintiff's grantors did not contain
an exception of the right of way obtained by the defendant
is therefore wholly immaterial and can have no bearing
upon the rights of the parties.

Relating to the plaintiff's claim of title acquired by adverse possession, the stipulation is clear that his use of the land outside of the line of the fence constructed by the defendant company was for the hay growing upon said land and for pasture purposes after the hay had been cut and removed.    In *Roberts v. Sioux City & P. R. Co.*, 73 Neb. 8, it was held: "The use for agricultural purposes, such as grazing and cultivation by adjoining landowners of otherwise unused and unfenced parts of the right of way of a railroad company, is not inconsistent with or adverse to the enjoyment of the easement." In other words, it was held that the use of a part of a railroad right of way by an adjoining owner for agricultural purposes would not ripen into a title, however long that possession and use was continued.    This we believe to be the general rule adopted by a great majority of the courts, and which appears to us to be founded in reason from the fact that such possession does not interfere with the business of the road or the maintenance of its line, and, until the land may be needed by the company in the further progress of its business, the possession and use will be regarded as permissive.

We discover no error in the record, and recommend an affirmance of the judgment appealed from.

EPPERSON, GOOD and CALKINS, CC., concur.

By the Court:    For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.