(120 N. W. 547.)

---

ELIZABETH COMFORD v. GREAT NORTHERN RAILWAY COMPANY,
ET AL.

Opinion filed March 12, 1909.

### Public Lands — Railroad Right of Way — Definite Location.

1. The grant of right of way and station grounds upon public lands of the United States to railroad companies, under the provisions of Act March 3, 1875, c. 152, 18 Stat. 482 (U. S. Comp. St. 1901, p. 1568), becomes operative only when a railroad company, specially indicated as a grantee by compliance with section 1 of the act, has definitely located its right of way and station grounds adjacent thereto. Such definite location may be made, either by acts of the railroad company which operate as unmistakable evidence of appropriation, such as the construction of its railroad, station buildings, and other appurtenances, or by filing with the register of the land office for the district where the land is located a profile of its line of route and station grounds, approved by the Secretary of the Interior, in compliance with section 4 of the act.

### Same — Station Grounds.

2. Actual construction of a railroad definitely locates only a right of way extending to a distance of 100 feet on each side of the central line of track. Definite location of station grounds outside of, and adjacent to, such right of way must be made, if at all, by other and further acts of the railroad company which operate as unmistakable notice to an intending settler of an appropriation by the railroad company of certain grounds for such purposes.

**Same — Homestead Entry — Priority of Rights.**

>    3. The rights of an entryman under the homestead law, who settles upon the public lands prior to the time that a railroad company has filed with the register of the land office for the district where the land is located a profile on which is shown a selection of a part of this land outside of, and adjacent to, its right of way as station grounds, are superior to those of the railroad company, unless prior to his settlement the railroad company has done acts that operate as unmistakable evidence and notice of an intention, on the part of the railroad company, to appropriate a portion of said land to its uses for station grounds.

**Same.**

>    4. The placing of structures appurtenant to a station, within the limits of the right of way of a railroad, is not of itself evidence of appropriation of any land for station uses outside of the right of way.

Appeal from District Court, Ward county; *Goss, J.*

Action by Elizabeth Comford against the Great Northern Railway Company and others. Judgment for plaintiff, and defendants appeal.

Affirmed.

*Arthur Le Sueur* and *Murphy & Duggan,* for appellants.

Building of road as definitely locates as the filing of a map. Jamestown & Northern Ry Co. v. Jones, 177 U. S. 126; St. Paul & Man. Ry. Co., v. Maloney, 24 L. D. 460 ; Montana Central Ry. Co., 25 L. D. 250 ; S. P. & M. R. Co., 26 L. D. 83.

Use of lands as station grounds is evidence of location. In re St. Paul, Minneapolis & Manitoba Ry. Co., 26 L. D. 83; In re Montana Central Ry. Co., 25 L. D. 250; St. Paul, Minneapolis & Man. Ry. Co. v. Maloney, 24 L. D. 460.

Settlement of an alien does not affect operation of a railroad grant. Central Pac. Ry. Co. v. Booth, 11 L. D. 89; Tittemore v. Southern Pac. 10 L. D. 463 ; Southern Pac. Ry. Co. v. Saunders, 6 L. D. 98 ; McCurdy v. Central Pac. Ry. Co., 8 O. C. L. 36 Kelly v. Quast, 2 L. D. 627.

*Palda & Burke, (Engerud, Holt & Frame,* of counsel) for respondent.

Different considerations apply to grant of lands than to the right of way. Ry. Co. v. Jones, 177 U. S. 125.

Actual construction is definite location. Doughty v. Soo Ry. Co. 15 N. D. 290, 107 N. W. 971.

The grant takes effect only when the company does some act that establishes fixity of location. Van Wyck v. Knevals, 106 U. S. 360, 27 L. Ed. 201; Kansas P. R. Co. v. Dunmeyer, 113 U. S. 629, 28 L. Ed. 1122; Smith v. N. P. Ry Co., 58 Fed. 513; Land Co. v. Griffey, 143 U. S. 32, 12 Sup. Ct. Rep. 362.

ELLSWORTH, J.    This is an action, in statutory form, to determine adverse claims to real property. The real property involved is a strip of land 100 feet wide and about three-quarters of a mile long, adjacent to the right of way of the appellant Great Northern Railway Company, and extending diagonally from the north line of a quarter section of land now owned by respondent, described as the S. ½ of N. W. ¼ and N. ½ of S. W. ¼ of section 36, township 157 N., range 94 W., in Ward county, N. D., to the White Earth river, which passes within a short distance from the east line of this land. Appellant claims title to this strip of land by virtue of compliance on the part of its lessor the St. Paul, Minneapolis & Manitoba Railway Company, with the provisions of an act of Congress, dated March 3, 1875 (18 Stat. 482, c. 152), granting right of way across the public lands to railway companies. The claim of respondent to the land rests upon the title conveyed by the United States to her grantor, one William McTavish, a settler upon the public lands under the provisions of the homestead act, and a patent issued to him upon final proof of settlement and residence.

The provisions of the act of March 3, 1875, so far as they are pertinent to the points presented by this appeal are as follows:

"Section 1.    The right of way through the public lands of the United States is hereby granted to any railway company duly organized under the laws of any state or territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proof of its organization under the same, to the extent of 100 feet on each side of the central line of said road; also the right to take from the public lands adjacent to the line of said road, material, earth, stone and timber necessary for the construction of said railroad; also ground adjacent to such right of way for station buildings, depots, machine shops, side tracks,

turnouts, and water stations not to exceed in amount 20 acres for each station to the extent of one station for each ten miles of its road.    *    *    *

Sec. 4. Any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of 20 miles of its road, if the same be upon surveyed lands, and if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such a right of way shall pass shall be disposed of subject to such right of way: provided, that if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road."

The facts, with reference to which there is little controversy, appear to be that the St. Paul, Minneapolis & Manitoba Railway Company, to whose interest appellant claims to succeed as lessee, on April 6, 1880, filed with the Secretary of the Interior of the United States copies of its articles of incorporation, and proofs of its organization under the same. In the year 1887 it constructed its railroad across the land in question, now owned by respondent, and placed certain buildings and other structures upon this land. These constructions consisted of a water tank, pumping plant, section house, a small depot building and stockyards. All of these, except the stockyards, were placed on the northerly side, and within 100 feet of the railway track. The stockyards were placed on the southerly side of the track. The evidence is conflicting as to the original size of this structure; but we think a decided weight of the testimony shows that, prior to the year 1895, it extended somewhat less than 100 feet from the central line of the track. In 1895 these stockyards were greatly increased in size, in that they were more than doubled in width, and extended in length to a point about 200 feet distant from the track, and have continued to occupy that space from that time to the present. On or shortly prior to April 18, 1887, appellant's lessor filed with the Secretary of the Interior of the United States a plat or profile of its line of route, designated as "Map of located line of the St. Paul, Minneapolis & Manitoba Railway from Minot, Dakota T., to the Great Falls, Montana T."

This plat was filed with the purpose, as declared by the president of the railroad company in his certificate thereto, "in order that said company may obtain the benefit of act of Congress approved February 15, 1887 (24 Stat. 402, c. 130), entitled 'An act granting to the St. Paul, Minneapolis & Manitoba Railway Company the right of way through Indian reservations in Northern Montana and North Western Dakota." As appears by a notation thereon this plat was, on July 2, 1887, "approved so far as the line of route passes over public lands." by the Secretary of the Interior. This map does not definitely locate appellant's land; but in the near vicinity of the White Earth river, as indicated on the plat, is a small circle marked "depot grounds." There is nothing to show that this plat was, at any time, filed with the register of the land office for the district where respondent's land is located. On January 13, 1900, appellant filed in the United States land office at Minot, N. D., a plat of its line or route across the land owned by respondent. This plat seems to have been withdrawn and afterward refiled in the United States land office at Minot on February 11, 1901. On this profile, in addition to the red line marking the course of the railroad track across respondent's land from the White Earth river to its northern boundary, there appears, on the north side of the track, a dark line at a distance, as indicated on the plat, of 100 feet, and on the south side of the track a dotted line at an indicated distance of 100 feet, and a continuous dark line at a further distance of 150 feet. There is no designation of the purpose of the dark lines, except the notation in their vicinity of "Sta. White Earth." This plat was, on June 10, 1901, "approved subject to all valid existing rights" by the Secretary of the Interior. A certificate appearing on this plat is to the effect that it "has been prepared to be filed in order to obtain the benefits of the act of Congress approved March 3, 1875, entitled 'An act granting to railroads the right of way through the public lands of the United States.'" and appears to be the only plat filed by appellant's lessor for that purpose.

Respondent's grantor, William McTavish, first settled upon the land in question in the spring of the year 1888. No survey of the land had then been made by the government. McTavish was not a citizen of the United States, and did not declare his intention to become such until October 31, 1894. He was, however, a resident of that part of Dakota Territory which, on November 4, 1889, became the state of North Dakota. In 1888 he was employed as a

pumpman at White Earth Station by the railroad company, and built a small house about 100 feet from the track on the south side. He lived in this house for about two years and then built another something over 200 feet from the south side of the track, between White Earth river and the railroad stockyards. In this house he lived continuously until July 28, 1900. On May 1, 1889, a government survey of the land was completed, and the plats of such survey filed in the district land office at Minot. McTavish at once made entry, under the homestead act, of the tract of land immediately surrounding his place of settlement, and on July 28, 1900, made final proof of his settlement and residence. This proof was accepted by the land department, and on November 28, 1900, a patent was issued, granting to McTavish the S. ½ of N. W. ¼ and N. ½ of S. W. ¼ of section 36, Township 157 N. range 94 W., fifth P. M., in North Dakota, without reservation of any claim or interest of any railway company for right of way or station grounds. On February 11, 1902, McTavish conveyed the land so granted to the respondent, Elizabeth Comford, by warranty deed, without reservation of any character.

The entire controversy presented by this appeal turns upon the construction to be given the act of March 3, 1875, granting right of way over the public lands to railroad companies. This act has heretofore been twice before this court for consideration. Jamestown & Northern Ry. Co. v. Jones, 7 N. D. 619, 76 N. W. 277; Doughty v. Minneapolis, St. Paul & Sault Sainte Marie Ry. Co., 15 N. D. 290, 107 N. W. 971. Appeals in both cases were taken from this court to the Supreme Court of the United States, and the Judgment in the first-mentioned case was reversed, the other affirmed. Jamestown & Northern Ry. Co., v. Jones, 177 U. S. 125, 20 Sup. Ct. 568, 44 L. Ed. 698; Minneapolis, St. Paul & Sault Sainte Marie Ry. Co. v. Doughty, 208 U. S. 251, 28 Sup. Ct. 291, 52 L. Ed. 474. In both of these cases the question in controversy was what constitutes definite location of a right of way under the act of March 3, 1875. In the case of Railway Company v. Jones it was settled that a right of way be definitely located within the meaning of the act, and the grant became operative by actual construction of the railroad. In the case of Railway Company v. Doughty, it was decided that the doctrine of definite location by actual construction of the railroad would not be extended to a case where the only evidences of appropriation consisted of a survey of the line of route, and the adoption

of the survey by the board of directors of the railroad company; or, in other words, that no act short of actual construction will operate to fix location, except the filing of a map or profile of the road, in compliance with the terms of section 4 of the act. The reason given by the Supreme Court of the United States for its holding that the line of route of a railroad may be definitely located by actual construction is that "actual construction of the road is certainly unmistakable evidence and notice of appropriation." This ruling would indicate that the element of notice to an intending settler enters largely into the purposes of the act of March 3, 1875. As the provisions of the act definitely fix the limits of the right of way granted at 100 feet on each side of the central line of the road, it follows that, when this line is definitely located, either by construction of the road, or by the filing of a plat as provided by section 4, an intending settler is immediately apprised of the exact extent of the claim of the railroad company upon any tract of the public lands, and may govern his entry accordingly.

The same rule of definite location cannot, however, be applied to station grounds, for the obvious reason that the shape, distance from the line of route, and boundaries generally of the station grounds are not described by the terms of the act. The extent of appropriation for this purpose may not exceed 20 acres for each station, and it must be taken adjacent to the right of way. These conditions met, there is no further restriction, and whether the station grounds extend in a narrow strip along the right of way, or in a square, oblong, or triangular form to a considerable distance from the track, depends entirely upon the selection made by the railroad company. It follows, therefore, that, if station grounds may be definitely located within the meaning of the act of March 3, 1875, by actual appropriation for railroad purposes, the element of notice to an intending settler requires some act on the part of the railroad company giving unmistakable evidence of its intention to appropriate certain land for that purpose. Compliance with section 4 of the act by filing in the district land office an approved plat of the line of route upon which the form and extent of its station grounds are shown would unmistakably operate as such notice. Where such plat is not filed, however, the railroad company must establish the fact of definite location by acts of construction or appropriation to its uses, as definite and unmistakable in character as would be shown by compliance with section 4.

In the case at bar the filing by the railroad company of the map of its located line in April, 1887, will not operate as a definite location of station grounds under the terms of section 4 of the act of March 3, 1875. This map was prepared and filed for the purpose of securing certain rights under the grant of another act of Congress, was not filed with the register of the land office in the district where the land was located, and was not, and could not have been, brought to the attention of an intending settler. The plat filed in the district land office at Minot on January 13, 1900, even if it may be said to locate station grounds with sufficient certainty, was not approved or filed until long after the rights of respondent's grantor had attached. It is apparent from the terms of the act that rights acquired under the provisions of section 4 attach only from the date of filing an approved plat in the local land office.

It is conceded that the grant of McTavish under his patent relates back to October 31, 1894, the date at which he declared his intention to become a citizen of the United States. There is some contention that, being a resident of North Dakota at the time of its admission to statehood, his rights relate back to November 4, 1889. Between these conflicting dates it is unnecessary for us to decide, as the weight of testimony indicates that any notice of appropriation of station grounds given by the railroad company in 1889 was substantially unchanged in 1894. This notice consists only in the construction of stockyards, extending at both dates somewhat less than 100 feet from the center line of the track. We fail to see in such construction any clear and unmistakable notice of appropriation of any amount of ground for station uses beyond that actually covered by the structure itself; and, as this was wholly within the right of way, which it is conceded the railroad company had acquired by actual construction of its track, there is no intention manifest on its part to appropriate, at this point, any grounds whatever outside the limits of its right of way. Certainly there is no act of the railroad company shown in the evidence which can be held to operate as notice to an intending settler prior to 1895 that it intended to claim any part of a strip of land 100 feet wide entirely outside of, and adjacent to, the south side of its right of way, and extending along it for a distance of three-quarters of a mile.

The rulings of the land department are throughout consistent with the theory of Secretary Vilas in Dakota Central Ry. Co. v. Downey, 8 Land Dec. Dep. Int. 115, that while the title to station

37

grounds may be obtained by a railroad company by actual appropriation, without compliance with the terms of section 4 of the act of March 3, 1875, yet that such title extends only to such grounds as are indicated by unmistakable acts of appropriation. What those acts must be is not stated, but that they must be obvious and substantial is indicated in the cases in which hearings are ordered for the purpose of determining the extent of the railroad companies' appropriation. St. Paul, Minneapolis & Man. Ry. Co. v. Maloney, 24 Land Dec. Dep. Int. 460; In re Montana Central Ry. Co., 25 Land Dec. Dep. Int. 250; In re St. Paul, Minneapolis & Man. Ry. Co., 26 Land Dec. Dep. Int. 83.

Our conclusion is that appellant has failed to show any claim to station grounds upon the land in question, either by actual appropriation for that purpose, or by compliance with the terms of section 4 of the act of March 3, 1875, prior to the time that the title of respondent's grantor attached, and that respondent is entitled to a decree quieting her title to this land. As this was the judgment of the district court, its decree is affirmed. All concur.