(December 31, 1913.)

## JOHN F. JOHNSON, Respondent, v. SPOKANE INTERNATIONAL RY. CO., Appellant.

[137 Pac. 894.]

PUBLIC LANDS—RAILWAY RIGHT OF WAY—RAILROAD BUILT WITHOUT FILING MAP—DEFINITE LOCATION—HOMESTEAD ENTRY.

1. A railway company that has complied with the act of Congress of March 3, 1875, in regard to right of way over the public lands, is made a grantee by the actual construction of the road, although a profile map of the road has not been filed.

2. *Held*, under the facts of this case, that the railroad company having located its right of way across the land in question and cleared such right of way of timber thereon, and graded its railway across such land, before a homesteader makes his homestead entry, the homesteader takes such land subject to said railway right of way.

3. *Held*, under the facts of this case, that the grant of said right of way under the act of 1875 became definitely fixed before said homestead entry was made.

APPEAL from the District Court of the Eighth Judicial District for Bonner County. Hon. John M. Flynn, Judge.

Action to recover damages for a railway right of way. Judgment for plaintiff. *Reversed.*

Allen & Allen and H. H. Taylor, for Appellant.

Where a railroad company has complied with the right of way act by filing with the Secretary of the Interior a copy of its articles of incorporation and proofs of its organization under the same, and constructed a railroad over the land, it obtains a full and complete right of way under that act without the necessity of filing a profile or map as provided in sec. 4 of the act. (*Jamestown & Northern R. Co. v. Jones,* 177 U. S. 125, 20 Sup. Ct. 568, 44 L. ed. 698; *Dakota Central R. R. Co. v. Downey,* 8 Land Dec. 115.)

At the time the plaintiff filed upon the land the appellant with its employees was in full and complete possession of the right of way for 100 feet in width, and this actual possession was notice to all the world that the same was taken for railroad purposes and definitely fixed the line of the road over the land. (*Lynch v. Lower Yakima Irr. Co.,* 73 Wash. 173, 131 Pac. 829.)

Any person settling upon the land between the termini of the road took it subject to any right of way which the company might thereafter construct the road upon, notwithstanding the fact that no definite line or map was filed showing the right of way. (*St. Joseph & D. C. R. R. Co. v. Baldwin,* 103 U. S. 426, 26 L. ed. 578; *Stuart v. Union Pac. R. Co.,* 227 U. S. 342, 33 Sup. Ct. 338, 57 L. ed. 535.)

G. H. Martin, for Respondent.

There are just two methods by which a railway company may acquire its right of way across the public domain: one by filing the map provided for in section 4; the other by actual construction of the road. (*Dakota Cent. R. R. Co. v. Downey,* 8 Land Dec. 115; *Jamestown etc. R. Co. v. Jones,* 177 U. S. 125, 20 Sup. Ct. 568, 44 L. ed. 698.)

Until the line of road is definitely fixed, either by the filing of the map or the actual construction of the road, it may be changed at the will of the railroad company. (*Van Wyck v. Knevals,* 106 U. S. 360, 1 Sup. Ct. 336, 27 L. ed. 201.)

In this case it is held that "the route must be considered as definitely fixed when it has ceased to be the subject of change at the volition of the company."

It is held in *Sioux City etc. Land Co. v. Griffey,* 143 U. S. 32, 12 Sup. Ct. 362, 36 L. ed. 64, that the surveying and staking of the line does not definitely fix its location.

Under the act it requires either actual construction or the filing of the map provided for in sec. 4 of the act to vest the company with title to the right of way. (*Denver etc. R. Co. v. Hanoum,* 19 Colo. 162, 34 Pac. 838.)

A road is complete or constructed when that is done which is necessary to make it a railroad; that is to say, when it is made ready and put in proper condition for the placing and running of regular trains upon it, for its "operation" as it is usually termed. (*De Graff v. St. Paul etc. R. Co.*, 23 Minn. 144.)

SULLIVAN, J.—This action was brought to recover damages alleged to have been sustained by reason of the appellant railway company locating and constructing its line of railroad across 160 acres of land claimed by the respondent, situated in sec. 18, township 60 north, range 1 east, Boise meridian, in Bonner county.

It is alleged in the complaint that the respondent made his homestead entry on said land on April 16, 1906, and submitted his final proof in July, 1911, and obtained his patent for said land on November 20, 1911; that after respondent had made his homestead entry, the railway company, without his consent, entered upon his land and constructed its railroad across the same, and since its construction has been operating its trains over said line of road.

The complaint and amended complaint were not verified, and the answer of the defendant denies generally the allegations of the complaint, and by way of affirmative defense avers that it filed with the Secretary of the Interior a certified copy of its articles of incorporation and made due proof of its organization on May 3, 1905, as provided by the right of way act of Congress, approved March 3, 1875, and that in the fall of 1905, and before the plaintiff had made entry of said land as a homestead, and while said land was government land, the defendant entered upon said land, clearing its right of way to the extent of 100 feet wide and fully graded and constructed its road thereon, all of which was done and completed prior to April 16, 1906, the date respondent made his homestead entry for said land; that when respondent filed his homestead entry upon said land the defendant was in actual possession of said strip of land and was using the same for railroad purposes, and that appellant took possession of the

right of way across said land, definitely surveyed and located its right of way thereon, cut and removed the timber from the right of way and constructed its road thereon prior to April 16, 1906, and also sets up the statute of limitations.

On the issues thus made the action was tried by the court with a jury and a verdict was rendered by the jury in favor of the respondent for $501.55, on which verdict a judgment was entered. A motion for a new trial was denied by the court, and the appeal is from the order denying the new trial.

Several errors are assigned, but the real question at issue is: Did the appellant corporation acquire a right of way over said land under the provisions of the act of Congress of March 3, 1875, before the respondent made his said homestead entry for the land?

It clearly appears from the evidence that the railroad company had definitely located its right of way across said land in 1905, and in the fall of that year cleared its said right of way of timber, the same being quite heavily timbered. It is stipulated that the defendant is, and ever since the year 1903 has been, a corporation duly organized and existing under the laws of the state of Washington, for the construction of a standard gauge railroad and for the common carriage of passengers from Spokane, Washington, through Bonner county, Idaho, to connect with the Canadian Pacific system at the state line, and that on June 3, 1905, it filed in the office of the Secretary of the Interior at Washington, D. C., a copy of its articles of incorporation and due proof of its organization, as required by said act of Congress granting to railroads a right of way through the public lands of the United States.

The evidence shows that in the summer of 1905, the defendant surveyed and located the central line of its railway through and over said lands of the plaintiff, and that said land so remained public land of the United States until April 16, 1906, the date when plaintiff made his homestead entry, and that between the time of making said survey and the said entry of plaintiff, the defendant entered upon said right of way through said land, and cleared the timber, brush and other material therefrom to a width of 100 feet, being

50 feet on either side of the central line of its railroad, and that between the date of its survey and the time of making the entry by the plaintiff, the defendant entered upon said right of way so cleared and graded and constructed the road-bed for said railway, and that between said date and the month of July, 1906, the defendant fully completed its railroad and laid its track thereon, and has since used the same as a railroad.

It also appears from the evidence that at the time plaintiff filed his said homestead entry upon said land the plaintiff well knew that said railroad was being constructed upon said line and through said land.

One of the contractors who graded said railroad through respondent's land, and who was in personal charge of the work, testified that he had the construction of five miles of said railroad at Summit Spur, which included the part of the road through respondent's land; that he commenced said construction in 1905 and finished the construction of said five miles on the 26th of April, 1906; that he went over the land now claimed by respondent when he took the contract, but did not go there to do any grading on said land until March 10, 1906; that he had then about fifty-three men at work; that he finished grading the main line through respondent's land about the 12th or 14th of April, 1906, the last ten or twelve days of the work being surfacing of the roadbed and making it in form to lay the ties on, but the main grade was finished through the land about the 12th or 14th of April; that the right of way was cleared of timber the last part of August, 1905; that on the 1st day of April, the road was graded both north and south of respondent's land, except a big sand cut which was about 500 feet north of respondent's land; that he finished said cut about the 22d of April.

Respondent testified that he established his residence on said land on October 8, 1906, about six months after he made the entry; that he knew the right of way was cleared of timber through said land and was cleared before he saw the land, and that he knew that the graders were grading on both sides of his land for said railroad, and thinks they had

been doing some work on his land at that time, but that he did not know that the railroad was going to be there when he filed on the land. While he claimed there had not been much grading done on his land, plaintiff testified as follows: "Q. You say they were grading some on your land at the time—you knew where the line was going that the grading was on, did you not—you knew where the line was that the grading was on? A. I could see, yes, sir."

A brother in law of the plaintiff testified on his behalf to the effect that the railroad was not constructed over the land until some time between the 16th of April and the 8th of October, 1906, but the contractor who constructed the roadbed testified positively that he completed the grade across the land in question by the 12th or 14th of April, and the record clearly shows that the track was laid some time in July of that year.

The contention of counsel for respondent seems to be that under said act of Congress a railroad company cannot acquire a right of way across public land until its railroad is completed and in operation, where it has not filed a profile map as provided by the 4th section of said act. There appears to be no question but that the railroad company surveyed its right of way across this land in 1905, and cleared the right of way of comparatively heavy timber; that it was graded, or mostly graded, prior to the date respondent entered said land as a homestead. The railroad had possession of said right of way at the time the entry was made and the respondent had full notice of that fact and that it was proceeding with complete construction of railway.

In the case of *Jamestown & Northern R. Co. v. Jones,* 177 U. S. 125, 20 Sup. Ct. 568, 44 L. ed. 698, the supreme court held that under the act of Congress of March 3, 1875, entitled "An act granting to railroads the right of way through the public lands of the United States," where a railroad company has complied with the act by filing with the Secretary of the Interior a copy of its articles of incorporation and proofs of its organization under the same, and where the railroad company has constructed a railroad over the land, that it

obtains a full and complete right of way under that act without the necessity of filing a profile map as provided in sec. 4 of the act.  The court in that opinion said:

"This case establishes that the railroad company becomes specifically a grantee by filing its articles of incorporation and due proofs of its organization under the same with the Secretary of the Interior. . . . . But what constitutes a definite location of the right of way?  Upon the answer to that question the present controversy hinges.  The state courts decided, as we have seen, that the right of way only became definitely located by the filing of a profile map of the road. The contention of the plaintiff in error is that the right of way may be definitely located by the actual construction of the road.  And this was the ruling of the Interior Department in *Dakota C. R. Co. v. Downey,* 8 Land Dec. 115, and the ruling has been subsequently adhered to. . . . . It follows from these views that the grant of the plaintiff in error by the act of 1875 became definitely fixed by the actual construction of its road, and that the entry of the defendant in error was subject thereto."

The only difference between that case and the one at bar is, that in that case the road had been fully constructed and the track laid upon it and in operation, while in the case at bar the road had been surveyed, the right of way cleared of timber for a hundred feet in width and the road graded over the respondent's land, but the track was not yet laid.  We think it is clear that the railroad company had actual possession and was proceeding with diligence to complete the road by laying its track thereon, which it did in the month of July, 1906.  This was notice, not only to the respondent but to the world, that said land was in the possession of the railroad company for railroad purposes.  The appellant company was a grantee under said act of Congress.  As bearing upon this question, see *Stuart v. Union Pac. R. R. Co.,* 227 U. S. 342, 33 Sup. Ct. 338, 57 L. ed. 535, decided Feb. 24, 1913.

We think, under all the facts of this case, that the respondent acquired no interest whatever in said right of way and took the same by his homestead entry and patent subject to

the rights of the railroad company that had possession of said land when said homestead entry was made and has held possession of it ever since.

The judgment is reversed and the cause remanded, with directions to the trial court to enter judgment in favor of appellant. Costs awarded to the appellant.

Stewart, J., concurs.

AILSHIE, C. J., Concurring Specially.—I think the equities of this case are with the appellant, but I doubt somewhat if the facts of this case bring appellant within the terms of the statute as embodied in the act of Congress of March 3, 1875.